NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MORSE SHOE, INC., Respondent.

No. 77–3313.

United States Court of Appeals,
Ninth Circuit.

Feb. 22, 1979.

William R. Stewart (argued), Washington, D. C., for petitioner.

Madeline Balk (argued), Seligman & Seligman, New York City, for respondent.

Before CARTER and HUFSTEDLER, Circuit Judges, and ORRICK,* District Judge.

PER CURIAM:

The National Labor Relations Board ("Board") seeks enforcement of its order based upon findings that Morse Shoe, Inc. ("Morse") had committed unfair labor practices in violation of Sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act (29 U.S.C. §§ 151 *et seq.*) by refusing to bargain with Retail Clerks Union Local 324, Retail Clerks International Association, AFL–CIO ("Union"), by unilaterally modifying the existing collective bargaining agreement and refusing to make pension and welfare benefit payments, and by withdrawing recognition of the Union and repudiating the contract. The Board's order, *inter alia*, required Morse to bargain with the Union upon request and to make its employees whole for benefits lost as a result of Morse's unfair labor practices. Morse resists enforcement contending that its bargaining obligation was removed by a decertification proceeding of a bargaining unit of which its employees should have been found members and that its refusal to bargain was also justified by its reasonable good faith doubt of the Union's majority status. We enforce the Board's order.

Morse operates a leased shoe department in a store in Huntington Beach, California, owned and operated by Vornado, Inc., doing business as "Two Guys." A collective bargaining agreement between Two Guys and the Union (the "Two Guys contract"), effective from October 1, 1970, through December 31, 1974, recognized the Union as the exclusive bargaining agent for "all employees . . . including leased departments, employed by Employer . . ." at the Huntington Beach store. The agreement further provided that employees in leased shoe departments normally employing not more than four employees "shall not be covered by this Agreement, but under Union's so-called retail shoe industry agree-

ment," including its wage and benefit provision. As to "all other conditions of employment that are common to employees generally at the store," the Two Guys contract was to supersede inconsistent provisions of the shoe industry agreement. Two Guys promised to use its best efforts to insure that any shoe department licensee would execute and abide by the terms of the applicable union-industry agreement. The shoe department in the Huntington Beach store was formerly operated by Karl's Shoe Stores, Ltd. ("Karl's"), which had executed a collective bargaining agreement with the Union (the "Karl's contract"). The Karl's contract incorporated the provision of the retail shoe industry contract, and that contract was to be effective October 1, 1972, though September 30, 1975.

Morse began operating the shoe department about October 2, 1973.[1] The department normally employed two employees. On October 2, 1973, Morse entered into a letter of understanding with the Union incorporating the provisions of the Karl's contract. On request of Two Guys, Morse executed an assent agreement with the Union on May 28, 1974, reaffirming the Karl's contract and specifically acknowledging an obligation to contribute to various Union trust funds.

Pursuant to a petition filed by a Two Guys' employee a consent election was held for the unit composed of all Two Guys' employees at the Huntington Beach and Garden Grove, California, stores. The election resulted in decertification of the Union on March 24, 1975. Morse was not a party to these proceedings, and its two employees did not participate in the election. On March 24, 1975, Morse stopped making pension and welfare contributions for its employees. About April 15, 1975, the manager of the shoe department told Union agents that Morse no longer had a contract with the Union.

---

* Honorable William H. Orrick, Jr., United States District Judge, Northern District of California, sitting by designation.

1. Morse was not a successor to Karl's.

Morse filed a petition for a representation election in a unit composed of the shoe department employees at the Huntington Beach store on July 21, 1975. The petition was accompanied by the department manager's affidavit stating that one of the two employees had told her that he no longer wanted to belong to the Union. The Regional Director dismissed the petition on issuing the complaint in this proceeding.

The Board found that the Union enjoyed a presumption of majority support arising from Morse's voluntary recognition of the Union in 1973 and that the Two Guys decertification election did not affect the shoe department employees.[2] Morse's contentions that its initial recognition of the Union was invalid because the shoe department was not an appropriate unit and that the Union had not been required to demonstrate its majority status were both rejected by the Board.[3] The Board concluded that Morse violated Sections 8(a)(5) and 8(a)(1) by withdrawing recognition without an objective basis for a reasonable good faith doubt of continued majority status and by refusing, on and after April 15, 1975, to bargain collectively with the Union.

In resisting enforcement of the Board's order, Morse argues that its relations with the Union were governed by the Two Guys contract, that the Two Guys contract recognized a bargaining unit composed of all employees at the Two Guys store, including the shoe department employees, and that Morse's bargaining obligation could not survive the decertification proceeding. Alternatively, Morse defends its refusal to bargain on the ground that its refusal was based upon a reasonable good faith doubt of the Union's majority status and on the further ground that the Union had failed to demonstrate majority support prior to the initial recognition of the Union.

■ The Board's decision finding unfair labor practices and rejecting Morse's arguments is amply supported by the record. The Two Guys contract is irrelevant. Morse was not a party to that contract. Its

legal bargaining obligation arose from its voluntary recognition of the Union in the letter of understanding and in the assent agreement by which Morse assumed the Karl's contract. Under the latter contracts, the company recognized the Union as the exclusive bargaining agent for a unit composed of the shoe department employees, and it also agreed to a contract that did not expire until September 30, 1975. The assent agreement did not adopt the Two Guys contract. Therefore, Morse's contention that the Two Guys contract required Morse to recognize the Union as the representative of a storewide unit that included the shoe department is unfounded. It follows that the decertification election had no effect on the bargaining relationship between Morse and the Union.

■ An employer's voluntary recognition of a union as the representative of a group of its employees in an appropriate unit raises a presumption that the union enjoys majority support. That presumption continues throughout the term of the collective bargaining agreement, and, in a weaker form, even after expiration of the agreement. (*E. g. Pioneer Inn Associates v. NLRB* (9th Cir. 1978) 578 F.2d 835.)

■ The Board's determination that the shoe department was an appropriate bargaining unit was neither arbitrary nor capricious. The Board has very broad discretion in making unit determinations, and we must respect the Board's exercise of its authority in making bargaining unit decisions. (*South Prairie Construction Co. v. Local No. 627, International Union of Operating Engineers* (1976) 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382, *Atlas Hotels, Inc. v. NLRB* (9th Cir. 1975) 519 F.2d 1330.)

■ Morse is barred by Section 10(b) from claiming that the Union lacked majority support at the time the company initially recognized it. (*Local Lodge No. 1424, International Association of Machinists v. NLRB (Bryan Mfg. Co.)* (1960) 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832; *NLRB v. Tragniew* (9th Cir. 1972) 470 F.2d 669.)

---

**2.** 227 NLRB No. 53 (1976).

**3.** 231 NLRB No. 6 (1977).

546

The Union enjoyed a presumption of majority support at the time the company refused to bargain. Morse had the burden of overcoming the presumption by convincing evidence either of an actual loss of majority or of objective criteria supporting a reasonable good faith doubt of the Union's continued majority. (*Pioneer Inn Associates v. NLRB, supra*; *NLRB v. Cornell of California, Inc.* (9th Cir. 1978) 577 F.2d 513; *NLRB v. Vegas Vic, Inc.* (9th Cir. 1976) 546 F.2d 828.) The company did not carry its burden on either point. The only evidence offered to overcome the presumption was the department manager's affidavit stating that one of the employees said he no longer wished to be represented by the Union. The affidavit is useless because nothing in the record indicates that the employee's statement was made before Morse began its unfair labor practices. The affidavit is dated July 11, 1975, some two months after the company refused to bargain and almost three months after it refused to make benefit payments for which it contracted. Moreover, the evidence was tainted by Morse's unlawful activities, and it cannot be used to establish a good faith doubt defense. (*Medo Corp. v. NLRB* (1944) 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007; *NLRB v. Sky Wolf Sales* (9th Cir. 1972) 470 F.2d 827; *NLRB v. Denham* (9th Cir. 1972) 469 F.2d 239.)

ORDER ENFORCED.