No. 80-123

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

AUDIT SERVICES, INC.,
a Montana Corporation,

Plaintiff and Respondent,

vs.

STEWART AND JANES,
a Montana Corporation,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable Robert Holter, Judge presiding.

Counsel of Record:

For Appellant:

Hash, Jellison, O'Brien and Bartlett, Kalispell,
Montana
Eugene R. Nielson argued, Kalispell, Montana

For Respondent:

Cure and Borer, Great Falls , Montana
Maxon  R. Davis argued, Great Falls, Montana

For Amicus Curiae:

Kevin A. Campana, Helena, Montana
Hilley and Loring, Great Falls, Montana
Emilie Loring argued, Great Falls, Montana

Submitted: November 20, 1980

Decided:  JAN 12 1981

Filed:  JAN 12 1981

Thomas J. Kearney
                                        Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Plaintiff trust fund, assignee of claims of certain benefit trust funds, sued defendant Stewart and Janes, employer, to recover contributions plaintiff alleged were due and owing pursuant to the terms of certain collective bargaining agreements executed by defendant. The cause was tried before the District Court of the Eleventh Judicial District, sitting without a jury, on July 12, 1979. The District Court entered judgment in favor of plaintiff and against defendant in the sum of $27,980.96. Defendant appeals from this judgment.

The sole issue on appeal is whether the collective bargaining agreements on which plaintiff sued are judicially enforceable.

The following facts are derived from extended findings of fact entered by the District Court and are disputed by defendant.

Defendant Stewart and Janes is a Montana corporation engaged in the construction industry in this state. In its construction business, defendant employs laborers and carpenters.

Defendant was a member of and had assigned its bargaining rights to a multi-employer bargaining group in Kalispell, Montana, for purposes of negotiating collective bargaining agreements with the local Carpenters and Laborers Unions. The Flathead Contractors Association or Western Montana Employers Association negotiated a series of collective bargaining agreements with several of the local unions in the area.

Because of the nature of defendant's business, defendant executed compliance agreements with several of the local carpenters' unions. These compliance agreements incorporated

the principal collective bargaining agreement. All the collective bargaining agreements incorporated the trust agreements; more specifically, the collective bargaining agreements and the compliance agreements required an hourly fringe benefit contribution from defendant to the trust on behalf of the signatory employers and the laborer and carpenter employees.

From January 1, 1972, to December 31, 1976, defendant properly reported 90.1 percent of the hours worked by its laborer and carpenter employees to the Montana Carpenters and Laborers Trust Funds. Defendant failed to report 9.9 percent of the hours worked by its carpenter and laborer employees between January 1, 1972, and December 31, 1976. Audit Services, plaintiff, became the assignee of the trustees of the above trust fund for the unreported hours and initiated this action for the trustees' claim for delinquent fringe benefits contributions, liquidated damages, interest and audit fees. Defendant has steadfastly denied any liability to the trustees of the trust fund.

Defendant claims that its operations constituted two divisions: the "Home Division" and the "Construction Division." Defendant claims that the Home Division utilized nonunion labor and the Construction Division employed union employees. No fringe benefits were paid on the nonunion employees of the Home Division. Defendant contends that the union was aware of the dual operation and that negotiations were conducted separately for these construction and operating divisions.

The District Court found that: the Home Division and the Construction Division were nothing more than "an internal bookkeeping division of defendant corporation"; the two

-3-

divisions have one single employer; that/ all of defendant's laborer and carpenter employees fall within the scope of the collective bargaining and trust agreements; and the employees work "back and forth" between the union and nonunion divisions of defendant.

At no time prior to May 5, 1978, did defendant ever act or attempt to void any of the above compliance and collective bargaining and trust agreements. The District Court found that defendant voluntarily recognized the collective bargaining representatives for its laborer and carpenter employees. Defendant contended throughout the trial that the union never made any claim to defendant that it had been designated to represent a majority of the employees. The union and plaintiff admit that there were no N.L.R.B. election proceedings to determine the union's majority status among the employees and that it never received majority status in a formal way.

This action was brought by plaintiff under Section 301 of the Taft Hartley Act, 29 U.S.C. §185. Although we have concurrent jurisdiction with federal courts to hear Section 301 suits, we must apply federal substantive law, not state law. Textile Workers Union v. Lincoln Mills of Ala. (1957), 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Charles Dowd Box Co. v. Courtney (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483; Local 174, Teamsters, etc. v. Lucas Flour Co. (1962), 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593. This suit is for the collection of certain fringe benefits allegedly due under certain collective bargaining agreements. The validity of the trust funds claim is dependent upon whether the contracts are enforceable.

Defendant contends that the contracts sued on are, by their very nature, prehire contracts and, therefore, under applicable federal law are not enforceable. We disagree.

-4-

The National Labor Relations Act provides:

"It shall not be an unfair labor practice . . .
for an employer engaged primarily in the build-
ing and construction industry to make an agree-
ment covering employees engaged (or who, upon
their employment, will be engaged) in the build-
ing and construction industry with a labor or-
ganization of which building and construction
employees are members . . . because (1) the
majority status of such labor organization has
not been established under the provisions of
section 159 of this title prior to the making
of such agreement . . . Provided further, that
any agreement which would be invalid, but for
clause (1) of this subsection, shall not be a
bar to a petition filed pursuant to section
159(c) or 159(e) of this title." 29 U.S.C.
§158(f).

This section (hereinafter referred to as section 8(f))

of the NLRA permits a construction industry, such as defendant,

and a union to enter into a collective bargaining agreement

without the union being designated as the bargaining repre-

sentative by a majority of the employees covered by that

agreement. Without that proviso, the making of such a

prehire agreement would constitute an unfair labor practice.

The purpose of Congress in allowing the execution of

prehire agreements in the construction industry is discussed

in Bricklayers Local 3 (1966), 162 NLRB 476, 64 LRRM 1085.

In that case the Board described the purpose of a prehire

agreement as:

". . . an initial attempt by a union and an
employer in the construction industry to com-
mence such a collective bargaining relation-
ship. Thus, the entire legislative history
of Section 8(f) (1) is couched in terms of
'pre-hire agreements,' a reference which can
have no meaning in the situation where, as
here, the parties are continuing an existing
bargaining relationship under which employees
have previously been hired . . . Congress en-
visioned its prehire provisions as applying
only to the situation where the parties were
attempting to establish a bargaining relation-
ship for the first time." 64 LRRM at 1086.
(Emphasis added.)

-5-

The record here, however, indicates that the contracts between defendant and the unions were not prehire agreements. There had been an ongoing collective bargaining relationship for a number of years between defendant and the unions. The employer himself testified at trial that he had "work in progress" at the time he signed at least some of the agreements although he "couldn't remember" whether he had laborers on the payroll but that "more than likely" when he signed a particular laborers' contract he did.

Similarly, in connection with a carpenters' agreement, defendant's president testified that he "probably" had carpenters on the payroll at the time it was signed. He further testified that when he signed agreements for Butte, defendant had the job constructing what was known as the Butte Stadium at the junior high school; when he signed agreements applying to central Montana, defendant had a job in that area, the Toole County State Bank in Shelby; when he signed the the agreement for Anaconda, defendant had a job at the Warm Springs State Hospital. When other agreements were signed, defendant's president testified that he was "sure we were building something," and that "more than likely" he had laborers on the payroll at the time. Again, he testified he was "building things" when another agreement was executed.

Carpenters' business agent Rosman testified he had first determined he had members working on the Toole County State Bank project in Shelby and presented the compliance agreement to an agent of defendant.

According to the N.L.R.B., prehire agreements do not include multi-employer collective bargaining agreements to which an employer is a party by virtue of being a member of a multi-employer association. Authorized Air Conditioning Company (1978), 236 NLRB No. 24, 98 LRRM 1538, enforced (9th

-6-

Cir. 1979), 606 F.2d 899; Amamdo Electric (1978), 238 NLRB No. 3, 99 LRRM 1453. In a multi-employer bargaining group, the appropriate bargaining unit is group-wide, such that the question of majority support of one member's work force is irrelevant.

Defendant had participated in multi-employer bargaining units (the Flathead Contractors Association and the Western Montana Employers Association) in dealing with the unions. This was not the initial bargaining attempt that Congress had in mind under section 8(f).

In participating with multi-employer bargaining groups, defendant cannot claim that its collective bargaining relationship with the unions never developed past infancy:

> "This voluntary act of the defendant effectively merged his company with the other member companies of the Associated General Contractors as one large collective bargaining unit. Thenceforth, it became irrelevant whether a majority of Schafer's employees favored the union so long as a majority of those employed by the Associated General Contractors were union people." Trades Council v. E.C. Schafer Constr. Co. (1980), 104 LRRM 2114, 2116.

The District Court made extensive findings of fact. In one finding the court held that "[i]n executing each of the above compliance agreements and in authorizing the Flathead Contractors Association and Western Montana Employers Association to execute multi-employer bargaining agreements with the Laborers and Carpenters Unions, Stewart and Janes voluntarily recognized the Laborers and Carpenters Unions as collective bargaining representation for its laborer and carpenter employees." Clearly, this finding is supported by substantial evidence. We also find that defendant made a voluntary recognition of the unions as the majority bargaining representative of its employees.

-7-

Under the National Labor Relations Act, a union can become the bargaining representative for a particular group of employees in either of two ways. One way is for the employer to refuse to recognize the union as representing a majority of the employees. Then the union may petition the N.L.R.B. for an election. If the union wins the election, the N.L.R.B. will certify it as the exclusive bargaining agent of the employees.

The second way for a union to become the bargaining representative of the employees is for the employer to voluntarily recognize the union as the representative of a majority of the employees. No particular procedure is required for the employer to follow in making its determination that the union represents a majority of the employees. However, the employer would commit an unfair labor practice in violation of sections 8(a)(5) and 9(a) of the National Labor Relations Act if it recognized a collective bargaining agent which did not represent a majority of the employees.

Defendant recognized the unions as the collective bargaining agent of its employees under the second alternative. The record bears this out:

(1) Defendant bargained with the unions on a number of different projects.

(2) Defendant signed a number of different contracts.

(3) Defendant engaged in a protracted collective bargaining relationship.

(4) Defendant demonstrated recognition by the manner in which it paid the very fringe benefit contributions at issue here. Defendant properly reported over 90 percent of the hours worked by its laborer and carpenter employees. Hours were reported for union members; nonunion employees were not reported. Given the 90 percent figure, it can be presumed

-8-

that a majority of defendant's employees, as union members, supported the unions. Quad C Corporation and Associated General Contractors and Carpenters, California State Council (1979), 246 NLRB No. 75, 102 LRRM 1597.

(5) Laborers' business agent Fleming and carpenters' business agent Robinson testified that members of their unions were employed by defendant, and they dispatched members from their hiring halls to defendant's construction projects. Carpenters' business agent Rosman also dispatched union members to defendant's jobs. There was undisputed evidence of union members working on defendant's projects.

The N.L.R.B. has ruled that an employer cannot rely on the case of N.L.R.B. v. Local Union No. 103, Intern. Ass'n., etc. (1978), 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586, and repudiate a prehire contract at a time when a majority of its employees are union members. V. M. Construction Co. (1979), 241 NLRB No. 84, 100 LRRM 1625.

Defendant's claim that the unions never demonstrated majority support means nothing. While construction industry employers can execute "prehire agreements" under section 8(f), any employer--including ones in the construction industry--can voluntarily recognize a labor union as the representative of a majority of its employees without the necessity of N.L.R.B. certification. N.L.R.B. v. Morse Shoe, Inc. (9th Cir. 1979), 591 F.2d 542; Pioneer Inn Associates v. N.L.R.B. (9th Cir. 1978), 578 F.2d 835. Such agreements are valid under Section 9(a) of the Labor Management Relations Act, 29 U.S.C. §159(a).

Once an employer voluntarily recognizes a union as the bargaining representative of a majority of his employees, a presumption of continued majority support arises. In Sahara-Tahoe Corp. v. N.L.R.B. (9th Cir. 1978), 581 F.2d 767, 769, the Court stated:

". . . As a general rule, an uncertified but
voluntarily recognized union enjoys a con-
clusive presumption of majority status for a
reasonable time, usually one year, after
voluntary recognition and a rebuttable pre-
sumption thereafter. [Citation omitted.]
'The presumption is rebutted if the employer
shows, by clear, cogent, and convincing evi-
dence, that the union was in the minority or
that the employer had a good faith reasonable
doubt of majority support at the time of the
refusal.'"

Moreover, when an employer voluntarily recognizes a

union, a presumption attaches that a majority of the affected

employees desire union representation. N.L.R.B. v. Rogers

I.G.A., Inc. (10th Cir. 1979), 605 F.2d 1164; N.L.R.B. v.

Morse Shoe, Inc., supra. The rationale is plain--if an

employer enters into a collective bargaining agreement with

a minority union, both the employer and the union have

violated the law. It is assumed that neither party knowingly

would do so. N.L.R.B. v. Rogers I.G.A., Inc., supra, 605

F.2d at 1165. The presumption applies to construction

industry employers. See Authorized Air Conditioning Co. v.

NLRB (9th Cir. 1979), 606 F.2d 899, 907, cert. denied 103

LRRM 3002; see also, Arco Electric Co. v. N.L.R.B. (1980),

103 LRRM 3114.

Defendant presented no evidence to rebut this presumption.

When the presumption is combined with the testimony of

carpenters' business agent Rosman and with the fact that

defendant paid union-sponsored fringe benefits for 90 percent

of the hours worked by its laborer and carpenter employees,

the conclusion is inescapable that defendant recognized that

the unions represented a majority of its laborer and carpenter

employees at all times relevant to this action. Defendant's

"prehire" defense came only as an afterthought after it was

billed for its audited delinquencies.

This conclusion is reinforced when one takes into

account the fact that all of the underlying collective

-10-

bargaining agreements contained union-security clauses.
While it is true that the unions never sought an NLRB certification
election, the absence of any effort by any of the employees
themselves to do so, to say nothing of the employer, strengthens
the presumption of majority support for the unions.  Custom
Sheet Metal Service Co., Inc.  (1979), 243 NLRB No. 142, 102
LRRM 1163.

If at any time during its collective bargaining relationship,
defendant ever doubted that the unions represented a majority
of the employees on a particular project, all it had to do
was to reject the contract or refuse to bargain with the
unions.  In all likelihood, the unions would have then filed
an unfair labor practice charge alleging a violation of
section 8(a)(5) of the Act.  The N.L.R.B. would have then
made a determination as to whether or not the unions repre-
sented a majority of the employees.  But, defendant never
raised the question while the jobs were in progress.

Instead, defendant signed the agreements; operated
pursuant to the contracts; paid wages and fringe benefits
pursuant to the contracts.  Only on the nonunion employees
did it not pay the necessary trust fund payments.  The
unions and employees believed a binding contract was in
existence.  It was only when the trust fund sought the
delinquent payments that defendant disavowed the contracts
as unenforceable prehire contracts.  By then, it was impossible
to have an N.L.R.B. representation election or gather authorization
cards on the long-completed projects.  The workers had
scattered, as they do in the construction industry, and it
was impossible to reconstruct the work force.

It would indeed be an injustice to allow an employer to
gain the benefits of a collective bargaining relationship

-11-

all during the project and retroactively void the contract when called upon to perform its side of the agreement. That is precisely what defendant is asking this Court to do when it asks this Court to declare the contracts to be unenforceable prehire agreements.

Defendant relies on Dee Cee Floor Covering (1977), 232 NLRB No. 72, 97 LRRM 1072, for the proposition that a union must establish majority support at each jobsite at which it seeks to apply a section 8(f) prehire agreement. However, the Dee Cee ruling, as such, is limited to section 8(f) prehire agreements. For nonsection 8(f) construction industry labor agreements, the National Labor Relations Board has consistently adhered to the position that the presumptively appropriate bargaining unit is employer-wide, recognizing this as the prevailing practice of the industry. New Enterprise Stone and Lime Co. (1968), 172 NLRB No. 240, 69 LRRM 1145. Since defendant failed to demonstrate that any of its labor agreements were section 8(f) prehire agreements, Dee Cee Floor Covering is of no import. See also G. M. Masonry Co. (1979), 245 NLRB No. 54, 102 LRRM 1542.

Secondary to its fundamental irrelevancy, defendant's Dee Cee argument fails for utter lack of proof. The record is totally devoid of any evidence indicating which projects were covered by which labor agreements. Nor is there any evidence by which the trustees' claims can be separated among these various (unspecified) projects. This failure is all the more telling in light of Audit Services having presented a detailed audit by which its claims were broken down according to hours worked by each individual employee on a monthly basis.

As this Court has noted many times in the past, our function on appeal is not to substitute its view of the

facts for that of the District Court. Toeckes v. Baker (1980), ___ Mont. ___, ___ P.2d ___, 37 St.Rep. 948. The District Court specifically concluded:

> "In voluntarily entering into each of the above-described collective bargaining agreements, the actions of Stewart & Janes give rise to a presumption that the unions signatory thereto were the representatives of the majority of the employees of Stewart & Janes covered by said agreements. Stewart & Janes has not produced any evidence sufficient to overcome that presumption." (Emphasis added.)

The District Court was plainly not satisfied that defendant had proved that any of its labor agreements were "prehire contracts." In light of the record presented for review, no basis exists for reversal of the District Court.

A federal district court in Washington has held the trust payment provisions of a prehire agreement unenforceable where there was "no dispute over the material fact that the union which negotiated the 'pre-hire' agreement . . . did not represent a majority of the employees." Trust Fund v. McDowell (W.D. Wash. 1979), ___ F.Supp. ___, 103 LRRM 2219. The case is presently on appeal to the Ninth Circuit. As there was no dispute, the court did not address the question of burden of proof had this fact not been conceded. This burden is on the party questioning the enforceability of the contract, here the employer. It is an affirmative defense, to be proven by a preponderance of substantial evidence. The employer has failed to carry this burden.

Defendant has failed to establish that these contracts are section 8(f) contracts; therefore, we will not address the issues raised in the Trust Fund v. McDowell, supra, case, nor will we address the ambiguous law in N.L.R.B. v. Local Union No. 103, Intern. Ass'n., etc., supra.

Defendant waited years after its construction work was performed before claiming that its labor agreements were unenforceable. It apparently has never raised the prehire issue directly with the unions themselves. Rather, the testimony as a whole portrays an employer who has worked to maintain an amicable relationship with the unions in Montana. Defendant always met and negotiated with the unions and when in need of workers frequently resorted to the union hiring hall. The vast majority of hours worked by the laborer and carpenter employers were properly reported to the trust funds.

In belatedly raising its prehire defense, defendant seeks to require the trustees to recreate its labor force of years gone by to meet that defense. To do so imposes an unfair burden on the trustees who were not present at the time. The magnitude of that burden (as well as defendant's failure to carry its own burden on the question) is graphically illustrated by defendant's own inability to recreate its labor force at the time any of the agreements at issue were executed. As a matter not only of "judicial administration," but also of fundamental fairness to everyone concerned, defendant should have pursued the prehire issue with the unions directly and should not be allowed to raise it now against the trustees' claims.

The contract is enforceable. The District Court made proper findings of fact and conclusions of law in applying federal law to this labor dispute. We find no error.

Affirmed.

_____
Justice

We Concur:

_Frank J. Haswell_
Chief Justice

_Gene B. Daly_

_Daniel J. Shea_

_John C. Sheehy_
Justices

This cause was submitted prior to January 5, 1981.