No. 14425

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

AUDIT SERVICES, INC., a
Montana Corporation,

Plaintiff and Appellant,

-vs-

FRANCIS TINDALL CONSTRUCTION,
a Corporation,

Defendant and Respondent.

---

Appeal from:   District Court of the Tenth Judicial District,
               Honorable Charles B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Cure and Borer, Great Falls, Montana

    For Respondent:

        Bradley B. Parrish, Lewistown, Montana

---

Submitted on briefs:  May 15, 1979

Decided: SEP 26 1979

Filed: SEP 26 1979

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Audit Services appeals from a statement of the Fergus County District Court, entered on behalf of the respondent denying recovery of alleged delinquent contributions, liquidated damages, interest, audit fees and attorney fees assessed as owing to appellant's assignors, the Montana Laborers, Operating Engineers and Teamsters Trust Funds for the period of January 1, 1971 through March 31, 1974.

Francis Tindall is the owner of Francis Tindall Construction, an unincorporated sole proprietorship located in Lewistown, Montana. Tindall Construction is primarily a road and highway construction firm but also does other construction work.

Tindall executed a "compliance agreement" with the Montana Laborers Union and the Montana Teamsters Union in June 1966 and with the Montana Operating Engineers Union in September 1967, binding the construction company to the terms of the collective bargaining agreements between the three unions and the Montana Contractors Association. Audit Services, a nonprofit corporation, is the assignee of the trustees of eight Montana employee benefit trust funds belonging to the three unions.

The trusts are jointly managed funds established pursuant to the National Labor Management Relations Act, 29 U.S.C., §186(c)(5) and the 1974 Pension Reform Act, 29 U.S.C., §1001, et seq., and are funded by employer contributions based on hours worked by employees within a particular craft. These funds provide health and welfare,

-2-

pension, apprenticeship and vacation benefits to
Montana laborers, operating engineers and teamsters,
both union and nonunion. Contribution rates for each
of the trust funds are set forth in the collective bargaining
agreements negotiated between the unions and employers.

In order to contribute to these trust funds on behalf
of his employees, an employer completes remittance report
forms each month which are sent to the administrative office
of the trusts. The employer lists on the forms each of
his employees who has worked within the particular craft
classification in the preceding month, lists the number of
hours worked by each employee and then multiplies the total
number of hours so listed against the contribution rates set
forth, in the applicable collective bargaining agreement.
The employer then sends his check for the full amount
computed as owing along with the remittance report.

A representative of the trust funds contacted Tindall
and requested an audit of his payroll records pursuant to
the provisions of the individual trust agreements. No
objection was voiced and an audit was conducted in May 1974,
by Howard G. Sand, an accountant retained by Audit Services.
The audit revealed that during the period from January 1,
1971 through March 31, 1974, Tindall's contributions to
the trust funds covered only 84.8% of his total payroll (i.e.
11,151 1/2 or 15.2% of the hours were not reported).

Using the collective bargaining agreements in effect
during the period of time covered by his audit, Sand
computed that an amount of $8,479.68 was owing to the
respective trust funds for delinquent contributions. An
additional amount consisting of $415.08 in liquidated
damages, $60.79 in interest and $327.04 for auditor fees
was assessed as owing, also based on the trust agreement
provisions.

-3-

After receiving no response to several requests for payment, claims for the liability were assigned to Audit Services and suit commenced on November 26, 1974. During the pendency of the litigation and up until the trial, Tindall continued to file regular monthly remittance reports and to make contributions to the trust funds at the rates specified by the union contracts in effect at the time.

As of the date of trial, Tindall's audited liability totaled $11,028.12. Additionally, Audit Services requested $3,000 as attorney fees under the terms of the trust agreements. A nonjury trial was held on February 16, 1978. On May 17, 1978, the decision of the court was rendered with findings of fact and conclusions of law dismissing the complaint.

The sole issue presented on this appeal is whether the District Court erred in deciding that as a matter of law, Francis Tindall has no obligation to make fringe benefit contributions to the Montana Laborers, Operating Engineers and Teamsters Trust Funds between January 1, 1971 and March 31, 1974.

A careful review of all the circumstances of the case and the matters on record requires as a matter of law, a holding that the respondent ratified the collective bargaining agreements that were in force during this period and the respondent is thereby estopped from denying the effect of this ratification.

Section 28-2-304, MCA, states:

"Ratification of contract void for want of consent. A contract which is voidable solely for want of consent may be ratified by a subsequent consent."

Ratification may occur in either an express oral manner or solely by means of personal conduct.

Ratification is a form of equitable estoppel and ordinarily is applied strictly in an agency context, whereby a principal approves the unauthorized act of an agent. See Larson v. Marcy (1921), 61 Mont. 1, 201 P. 685. However, it is also applied in varying classes of cases including contracts. Generally, contract ratification is the adoption of a previously formed contract, notwithstanding a quality that rendered it relatively void and by the very act of ratification the party affirming becomes bound by it and entitled to all the proper benefits from it. Shagun v. Scott Mfg. Co. (8th Cir. 1908), 162 F. 209, 219. The contract is obligatory from its inception and may be signified from the commission or omission of acts. East Cent. Okl. Elec. Coop., Inc. v. Oklahoma G. & E. Co. (Okl. 1977), 505 P.2d 1324, 1329.

Montana case law also has held that the subsequent recognition of a contract is the equivalent of ratification. This Court has stated:

> "'Ratification' is defined to be the confirmation of a previous act done either by the party himself or by another. (Citing authority.) And a confirmation necessarily supposes knowledge of the thing ratified. (Citing authority.) It follows that to constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances."
> Koerner v. Northern Pac. Ry. Co. (1919), 56 Mont. 511, 520, 185 P. 337, 340.

It is the manifestation of the ratifying party which controls. The respondent's outward expressions and actions judge of his intention and his intent in the case sub judice is clear. No doubt exists that the respondent had full knowledge of the existence and content of the collective bargaining agreements. Respondent's conduct in making contributions to the trust funds for the admitted purpose

-5-

of obtaining benefits thereunder for his employees, results in the ratification of the collective bargaining agreements providing for those contributions. At no time during the eight years since the original inception of the payment of contributions to the trust funds, including the three years involved in this action, did the respondent by an affirmative act attempt to rescind the contracts. His actions manifest the opposite conclusion.

Respondent vigorously asserts that these collective bargaining agreements were not ratified but this Court believes there is sufficient evidence of ratification and acquiescence and that in the absence of any reasonable explanation, such factors constitute indisputable evidence of ratification.

It must be held therefore, that the respondent having ratified the collective bargaining agreements by his actions and inactions, is now estopped from denying the validity of the contracts. For the reasons indicated, the judgment of the District Court is reversed and the matter shall be remanded for further proceedings in accordance with this Opinion.

John C. Sheehy
_____
Justice

We Concur:

Frank S. Haswell
_____
Chief Justice

Gene B. Daly
_____

John Conway Harrison
_____

Daniel J. Shea
_____
Justices

-6-