No. 82-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

AUDIT SERVICES, INC.,
a Montana Corporation,

Plaintiff and Appellant,

vs.

HARVEY BROS. CONSTRUCTION, a
Montana Corporation,

Defendant and Respondent.

---

Appeal from:   District Court of the Fifth Judicial District,
               In and for the County of Beaverhead
               Honorable Frank Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        Cure & Borer, Great Falls, Montana

    For Respondent:

        Christine C. Parker, Dillon, Montana

---

Submitted on briefs· April 15, 1983

Decided   June 30, 1983

Filed: JUN 3 0 1983

_Ethel M. Harrison_
_____
                    Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This appeal stems from the judgment of the District Court of the Fifth Judicial District, Beaverhead County, which declared the compliance agreements entered into between the carpenters and laborers unions and Harvey Brothers Construction (HBC) void, and concluded that they could be rescinded.

Plaintiff, Audit Services Inc., commenced this action to collect delinquent contributions, damages, and fees allegedly owed by defendant to plaintiff's assignors, the Montana Carpenters and Laborers Trust Funds. A nonjury trial was held on April 20, 1982, after which the court held in favor of defendant, HBC.

The defendant is engaged in the construction business. It employs carpenters and laborers. Beginning in 1967, the defendant entered into a series of compliance agreements with local carpenter and laborer unions. The compliance agreements incorporated by reference collective bargaining agreements, and pursuant to the terms of the collective bargaining agreements, defendant was required to make specified contributions to the Montana Carpenters and Laborers Trust Funds. These agreements were renewed through the years.

In 1975, defendant notified the labor unions that it intended to withdraw from the labor agreements. Withdrawal was to be effective at the expiration of the existing agreements. The existing agreements were the 1975-1977 agreement with the carpenters union, and the 1974-1976 agreement with the laborers union.

In 1979, defendant's payroll records were audited on behalf of the Carpenters and the Laborers Trust Funds. The audit disclosed that $9,969 was owed for delinquent contributions. Defendant refused to pay these delinquencies, along with other penalties, interest and costs due under the agreements when billed. The unions thereafter assigned their claims to plaintiff who then commenced this action.

Defendant, by amendment to the answer, alleged that the

agreements were void as having been obtained by duress, menace, and fraud. Furthermore, defendant claimed that the audit concerned records of ACE Construction, a partnership owned and operated by the owners of defendant; and since ACE was not a party to the agreements, it could not be liable for the payments.

The plaintiff contends that the records audited were the proper records based on the testimony of Mr. Howard Sands, the accountant who conducted the audit. He stated that all the persons, wages and hours appearing on the audit also appeared on the quarterly report dealing with unemployment contributions, filed with the Employment Securities Division of the State of Montana under the name of Harvey Brothers Construction. He further stated that some of his information was taken from the individual payroll records which recap a man's wages by week, month, and year.

Three issues are presented for our review. They are as follows:

1. Is there any credible evidence to support the findings of fact and conclusions of law upon which the District Court based its judgment?

2. Regardless of the evidentiary foundation for the judgment, is it consistent with the governing principles of federal labor law by which this case was supposed to be decided?

3. Did the District Court abuse its discretion by allowing the defendant leave to amend its answer shortly before trial?

We believe that the second issue is dispositive.

In a case brought to enforce a contract between an employer and a labor organization, which falls under section 301(a) of the Labor Management Relations Act (29 USC 185(a)), it should be noted that the state courts have concurrent jurisdiction with the federal courts. Audit Services Inc., v. Clark Brothers Contractors (1982), ____ Mont. ____, 645 P.2d 953, 955, 39 St.Rep. 928, (and cases cited therein); Audit Services v. Stewart and Janes (1981), _____ Mont. _____, 622 P.2d 217, 219,

38 St.Rep. 41, (and cases cited therein); Lowe v. O'Conner (1973), 163 Mont. 100, 515 P.2d 677, 678. However, in exercising that jurisdiction, the state courts must apply federal substantive law. Audit Services v. Clark Brothers Contractors, supra; Audit Services v. Stewart and Janes, supra; Lowe v. O'Conner, supra.

The application of the federal law to this case warrants reversal of the District Court's judgment.

The federal law on this point is most cogently set out by the ninth circuit court of appeals in Todd v. McNeff (9th Cir. 1982), 667 F.2d 800. In that case the circuit court of appeals was dealing with a section 8(f), NLRA, (29 USC 158(f)), pre-hire agreement, which in essence is what we have here as there was never any showing that the unions in question represented a majority of the HBC employees. The Todd court clearly set out the rationale for allowing these types of agreements in the construction industry where it stated:

> "The labor contract in this case is one under Section 8(f) of the National Labor Relations Act (29 U.S.C. § 158[f]). This section is an exception to the general labor policy that an employer can only enter into a collective bargaining relationship with a union that represents a majority of the employer's employees. As jobs begin and end, construction workers frequently change employers. Due to this, Congress has seen fit to allow so-called 'pre-hire' agreements in that industry. These agreements may be signed before the union represents a majority of the employer's employees, and may continue in duration through more than one of the employer's jobs, even if the employer goes through a high employee turnover. These agreements allow the employees some of the wage and benefit advantages of union representation, as well as relative wage stability. The employer is assured a qualified pool of workers to choose from when it needs them, protection against labor unrest during the period of the contract, and predictable labor costs, an invaluable tool in the bidding process." 667 F.2d at 801, 802.

The Todd court went on to state that as a matter of policy and based on the United States Supreme Court's mandate in NLRB v. Local No. 103, Iron Workers (Higdon Construction Co.) (1978), 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586, that section 8(f) (29 USC 158(f)) contracts "are voidable by the employer until the union

- 4 -

attains majority support." However, they also made it clear that such contracts are enforceable under section 301, LMRA (29 USC 185(a)) until the employer repudiates them. Todd v. McNeff, 667 F.2d at 803, 804. This remedy of repudiation applies even if the contracts were coerced, as was alleged in the case presently before us, (i.e., threats to picket and of violence). Todd v. McNeff, 667 F.2d at 804.

Here we see no evidence of repudiation. As a matter of fact if HBC did anything, it ratified these agreements with the carpenters and laborers. We have previously defined ratification in Audit Services, Inc. v. Francis Tindall Construction (1979), 183 Mont. 474, 600 P.2d 811, where we stated:

> "'"Ratification" is defined to be the confirmation of a previous act done either by the party himself or by another. (Citing authority.) And a confirmation necessarily supposes knowledge of the thing ratified (Citing authority.) It follows that to constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances.' Koerner v. Northern Pac. Ry. Co. (1919), 56 Mont. 511, 520, 186 P. 337, 340." 600 P.2d at 813.

We went on in Tindall to state that "[i]t is the manifestation of the ratifying party which controls. The respondent's outward expressions and actions judge of his intention . . ." 600 P.2d at 813. HBC's outward expressions and actions clearly show their intention here. Earnest Harvey admits that they signed the agreements with the two unions. The testimony of accountant Howard Sands, who conducted this audit of HBC as well as a previous one which covered from 1973 to July 1, 1975, shows that HBC voluntarily contributed thousands of dollars to the respective trusts between 1973 and 1975. These contributions were made in spite of the Harvey's claims that they were coerced into entering the agreements by threats of violence and the threat of being picketed. Such voluntary payments over a period of time with no efforts to rescind have been held to result in ratification of collective bargaining agreements. Audit Services v. Francis Tindall Construction, supra. (See also Pio v. Kelley (1976), 275

Or. 585, 552 P.2d 1301, where it was stated:

> ". . . that an employer who has made contributions to a trust fund established under the terms of a collective bargaining agreement over a substantial period of time may not, when later sued by the union to enforce such an agreement, contend at that time that the agreement is unenforceable by reason of duress." 552 P.2d at 1306, 1307.

(See also, Carr v. Settle Construction, Inc. (1974), 11 Wash.App. 336, 522 P.2d 849, where employer held to be estopped from denying collective bargaining agreement where he had operated under its terms for 15 years.)

Finally, the letters sent by HBC to the laborers and carpenters unions withdrawing from the agreements are further and more conclusive evidence that HBC intended to be bound, under the terms of those agreements, until the agreements expired. Those letters in pertinent part read as follows:

> "Gentlemen:
>
> "This is to advise you that this firm has elected to withdraw from any Compliance Agreements to which it is signator with your organization.
>
> "This election is effective upon the expiration of the existing agreement or agreements, and this notice is given pursuant to the withdrawal rights granted thereunder."

All the above set out actions tend to show that HBC had knowledge of all the material facts and that it confirmed the agreements, thus, meeting the definition of ratification from the Tindall case set out above.

The fact that HBC did not report any hours worked to the carpenters from July 1, 1975, to April 30, 1977, or to the laborers from July 1, 1975 to April 30, 1976, makes no difference. This was made clear by the ninth circuit in the Todd case where they stated noncompliance under some circumstances may be sufficient to repudiate but is not sufficient under all circumstances. 667 F.2d at 804. Just as the noncompliance there fell short of repudiation, it also does so here, in light of all the above-discussed circumstances showing ratification, especially the letters of withdrawal. Those letters made it clear that HBC

intended to abide by the terms of the agreements entered into with the two unions until they expired.

For the foregoing reason, we believe that the District Court erred and the case will have to be retried.

As this case requires reversal and remand for retrial, we would like to clarify two points. First, we would like to briefly discuss the argument put forth by the Harvey's that the payroll records audited were those of ACE Construction and not HBC. This may be of little significance if the two entities on retrial are found to be alter egos.

This concept is clearly defined in JM Tanaka Construction v. NLRB (9th Cir. 1982), 675 F.2d 1029. The Tanaka court set out the four factors to be used in determining if entities are alter egos where they stated:

> "In determining whether two businesses are alter egos, a court must consider the following factors: (1) centralized control of labor relations, (2) common management, (3) interrelation of operations, and (4) common ownership and financial control. Radio Union v. Broadcast Service, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789, (1965); NLRB v. Lantz, 607 F.2d at 295; NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 384 (9th Cir. 1979)." 675 F.2d at 1033.

All of these factors need not be present. JM Tanaka Construction v. NLRB, supra.

The other point is the argument that the agreements were orally limited in scope to two construction projects. This argument cannot stand as 29 USC Section 186(c)(5)(B) requires the detailed basis on which payments are to be made to the trust to be specified in a written agreement between the employer and employees. Thus, the business agent and employer cannot set down an agreement in the contract and then depart from its essence and make the final agreement orally. To allow such oral modifications to stand would defeat the protections provided the trust beneficiaries by 29 USC 186(c)(5). Waggoner v. Dallaire (9th Cir. 1981), 649 F.2d 1362.

For the foregoing reasons, this case is reversed and remanded

for further proceedings to be conducted in accord with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices