No. 91-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

AUDIT SERVICES, INC.,
a Montana corporation,

　　　　　Plaintiff and Respondent.

　-vs-

FRONTIER-WEST, INC.,
a corporation,

　　　　　Defendant and Appellant.

FILED

MAR 3 - 1992

Smith
... OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:　District Court of the Fourth Judicial District,
　　　　　　　In and for the County of Missoula,
　　　　　　　The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Christopher B. Swartley; Datsopoulos, MacDonald &
　　　　　Lind, Missoula, Montana

　　　For Respondent:

　　　　　Dennis Tighe; Cure, Borer & Davis, Great Falls,
　　　　　Montana

　　　　　　　　　Submitted on Briefs:　October 10, 1991

　　　　　　　　　　　　Decided:　March 3, 1992

Filed:

_____
　　　　　　　Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, Frontier-West, Inc., appeals from a judgment entered by the District Court of the Fourth Judicial District, Missoula County. The judgment awarded the respondent, Audit Services, Inc., **$1,791.32,** representing **$3,534.90** in delinquent contributions, liquidated damages, interest and audit fees less an offset of **$1,743.58,** plus $14,266 in attorney's fees and **$91.35** in costs. We affirm and remand for determination of reasonable attorney's fees on appeal.

The issues on appeal are:

1. Did the District Court err in determining that a contract existed between the parties?

2. Did the District Court err in awarding judgment to Audit Services for liquidated damages, interest and audit fees?

**3.** Did the District Court err in awarding attorney's fees to Audit Services?

**4.** Is Audit Services' claim estopped due to a failure to act upon constructive notice by Frontier-West?

The appellant, Frontier-West, is a construction contractor. The respondent, Audit Services, is the assignee of the Laborers-A.G.C. Pension Trust Fund, the Laborers-A.G.C. Training Trust Fund, the Laborers-A.G.C. Health and Welfare Trust Fund and the Southwest Montana Vacation - Savings Trust Fund (Trust Funds) for claims for fringe benefit contributions, liquidated damages, interest, audit fees and attorney's fees against Frontier-West.

2

From July 1987 through October 1987, Frontier-West was a subcontractor for American Asphalt, Inc. on a project at Malmstrom Air Force Base in Great Falls, Montana. On July 6, 1987, Frontier-West signed a project-only compliance agreement with the Montana District Council of Laborers. The compliance agreement obligated Frontier-West to abide by the terms and conditions of the collective bargaining agreement between American Asphalt and the Laborers and to be bound by and become a party to the trust agreements establishing the Trust Funds. After Frontier-West signed the compliance agreement, the Laborers unilaterally added a clarifying clause to that agreement. The clarification related solely to American Asphalt's obligations under the collective bargaining agreement.

The trust agreements establishing the Trust Funds obligate an employer delinquent in paying fringe benefit contributions to pay liquidated damages and interest. Under the trust agreements, an employer is delinquent if it does not pay contributions by the 20th day of the calendar month in which they are due. The trust agreements further provide that if an audit of an employer's payroll records discloses that the employer has a reporting error greater than five percent of the total hours to be reported, the employer must bear the costs of the audit.

Frontier-West employed a number of people to perform laborer work on the Malmstrom project and paid fringe benefit contributions to the Trust Funds based upon the number of labor hours worked. However, Frontier-West did not make fringe benefit contributions to

3

the Trust Funds for **957** hours worked by the three sons of the principal owners of the corporation and for **546** hours worked by four other employees performing laborer work.

On February **22, 1988, H. G. "Gus"** Sand, an independent accountant hired by the Trust Funds, completed an audit of Frontier-West's corporate payroll records covering the work on the Malmstrom project. The audit disclosed the unreported hours. Mr. Sand calculated that Frontier-West owed the Trust Funds **$6,386.47** for contributions, liquidated damages, interest and audit fees. The results of the audit were sent to Frontier-West.

Frontier-West took the position that it was not required to pay fringe benefit contributions for the hours worked by the owners' sons. It requested a revised audit separating the **957** unreported hours for the owners' sons from the total unreported hours. Mr. Sand supplied the revision, which recalculated the total into contested and uncontested portions. The contested portion of the audit covered the **957** unreported hours for the owners' sons and totalled **$4,161.41.** The uncontested portion of the audit covered the remaining **546** unreported hours and totalled **$2,476.87,** of which **$1,730.45** represented fringe benefit contributions due to the Trust Funds. The remainder represented liquidated damages, interest and audit fees.

In May **1988,** after receiving the revised audit, Frontier-West mailed a check to Mr. Sand for **$1,730.45.** The check was unaccompanied by instructions, remittance reports or correspondence. Mr. Sand forwarded the check to counsel for Audit

4

Services who informed Frontier-West that the partial payment check would not be deposited pending receipt of the remaining money owed for the contested and uncontested portions of the audit. Frontier-West did not pay or offer to pay the remaining balance of the uncontested portion of the audit. Audit Services did not deposit the check, which was returned to Frontier-West after this suit was filed.

On September 16, 1988, Audit Services filed suit against Frontier-West pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq. Audit Services' complaint alleged that Frontier-West breached its collective bargaining and trust agreement obligations to pay fringe benefit contributions. It sought payment of the delinquent contributions, together with liquidated damages, interest, audit fees and attorney's fees for both the contested and uncontested portions of the audit.

On February 16, 1990, the National Labor Relations Board issued a decision concerning American Asphalt's collective bargaining agreement. The NLRB clarified that the bargaining unit excluded children and spouses of owners or substantial shareholders. It further stated that its order was limited to clarification of the unit as related to the specific issues before it and that it had no authority to resolve the contract dispute over fringe benefit contributions involving Frontier-West.

On March 12, 1991, Audit Services voluntarily dismissed that portion of its complaint which sought contribution payments for

5

work performed by the owners' sons. It continued to seek collection of the contributions, liquidated damages, interest, audit fees and attorney's fees related to the uncontested portion of the audit. That same day, Frontier-West unconditionally tendered **$1,730.45,** representing the delinquent contributions, in partial satisfaction of the sums alleged to be due. Audit Services accepted Frontier-West's tender.

The District Court held a hearing on Audit Services' remaining claims related to liquidated damages, interest, audit fees and attorney's fees and subsequently entered judgment in favor of Audit Services. The court concluded that an enforceable contract existed between the parties and that Frontier-west breached the contract by failing to pay fringe benefit contribution payments when due and liquidated damages, interest and audit fees when billed for those amounts. It concluded that Audit Services was entitled to recover **$1,730.45** in delinquent contributions, **$443.59** in liquidated damages, **$724.29** in interest and **$636.57** in audit fees. The total owing was offset by **$1,743.58,** representing Frontier-West's partial payment of **$1,730.45** and an overpayment of **$13.13** to the Trust Funds. The District Court further concluded that Audit Services was entitled to attorney's fees of **$14,266.** This appeal followed.

**I.**

Did the District Court err in determining that a contract existed between the parties?

Initially, we note an issue of importance which has not been addressed by the parties or the District Court. From September **16,**

6

1988, when the complaint was filed, until March 7, 1991, Frontier-West appeared in this action solely through its president, Edward P. Murphy. On March 7, 1991, the law firm of Datsopoulos, MacDonald & Lind gave notice of appearance on Frontier-West's behalf and continues to appear on its behalf on appeal. We take this opportunity to caution the district courts with respect to the propriety of allowing a corporate officer who is not an attorney to appear on behalf of a corporation. A corporation is a separate legal entity and cannot appear on its own behalf through an agent other than an attorney. Weaver v. Law Firm of Graybill, et al. (1990), 246 Mont. 175, 178, 803 P.2d 1089, 1091.

In a case brought to enforce a contract between an employer and a labor organization, state courts have concurrent jurisdiction with federal courts but, in exercising that jurisdiction, state courts must apply federal substantive law. Audit Services, Inc. v. Harvey Bros. Constr. (1983), 204 Mont. 484, 487, 665 P.2d 192, 794. A state court may rely on state contract law as long as it effectuates the policy underlying federal labor legislation. Kemmis v. McGoldrick (9th Cir. 1983), 706 F.2d 993, 996.

Frontier-West contends that it never approved the contract modification made by the Laborers. It asserts that there was no valid contract upon which Audit Services could collect.

The District Court ruled that the compliance agreement signed by Frontier-West was a valid, enforceable contract because the modification did not materially alter Frontier-West's obligations under the agreement, Frontier-West ratified the agreement, and

Frontier-West's expectation when it entered into the agreement was to be bound. A trial court's findings of fact in a non-jury trial will not be disturbed unless they are clearly erroneous. Rule 52(a), M.R.Civ.P. Conclusions of law will be upheld if they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

In its answer to the complaint filed against it in this action, Frontier-West admitted to being bound by the compliance agreement. It is well settled that the parties are bound by and estopped from controverting admissions in their pleadings. Grimsley v. Spencer (1983), 206 Mont. 184, 199, 670 P.2d 85, 93; Fey v. A. A. Oil Corp. (1955), 129 Mont. 300, 323, 285 P.2d 578, 590.

In addition, Frontier-West also ratified the agreement. This Court defined ratification in Audit Services, Inc. v. Francis Tindall Constr. (1979), 183 Mont. 474, 478, 600 P.2d 811, 813:

> "'Ratification' is defined to be the confirmation of a previous act done either by the party himself or by another. (Citing authority.) And a confirmation necessarily supposes knowledge of the thing ratified. (Citing authority.) It follows that to constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances." Koerner v. Northern Pac. Ry. Co. (1919), 56 Mont. 511, 520, 186 P. 337, 340.

We further stated in Tindall that "[i]t is the manifestation of the ratifying party which controls." Tindall, 183 Mont. at 478, 600 P.2d at 813. Here, Frontier-West's outward expressions and actions clearly show its intention to be bound. Despite the present claim

**8**

that no binding contract ever existed, Frontier-West voluntarily paid a substantial portion of the contributions due to the Trust Funds pursuant to the terms of the agreement. We have previously held that such voluntary payments over a period of time with no attempt to rescind result in ratification of the agreement. *Audit Services, Inc. v. Harvey Bros. Constr.* **(1983), 204** Mont. **484, 665** P.2d **792.** We hold that the District Court correctly concluded that a valid, binding contract existed between the parties.

## II.

Did the District Court err in awarding judgment to Audit Services €or liquidated damages, interest and audit fees?

Frontier-West asserts that Audit Services is not entitled to liquidated damages, interest and audit fees related to the uncontested claim. It argues that the underlying uncontested fringe benefit contribution obligation was extinguished by Audit Services' rejection of its timely tender of the check for **$1,730.45** prior to litigation. It cites *Lehrkind v. McDonnell* **(1915), 51** Mont. **343, 350, 153 P. 1012, 1014,** where this Court stated:

> An unconditional offer in good faith to perform, by the party upon the obligation rests, coupled with the ability to perform, if rejected by the other party, is equivalent to full performance and extinguishes the obligation as to the party making the offer.

Thus, according to Frontier-West, it would be unreasonable to require it to pay penalties in the form of liquidated damages, interest and audit fees when it was Audit Services' choice to litigate and Frontier-West had previously tendered substantial performance.

The District Court concluded that Frontier-West's tender was insufficient and had no effect on its contractual obligations. We find no error in this conclusion. An unconditional tender of performance extinguishes the underlying obligation. Section 28-1-1202(1), MCA; Lehrkind, 51 Mont. at 350, 153 P. at 1014. However, an offer of partial performance has no effect and will not extinguish the obligation. Section 28-1-1203, MCA. In order to constitute a valid tender, the party making the tender must offer a specific amount which covers all that the other party is entitled to including interest, costs and attorney's fees. 86 C.J.S. Tender §§ 7, 8.

When Frontier-West signed the compliance agreement, it obligated itself, as it admitted in its answer to Audit Services' complaint, to be bound by and comply with the terms and conditions of the trust agreements establishing the Trust Funds. Under the factual circumstances of this case, Frontier-West was obligated under the trust agreements to pay liquidated damages, interest, and audit fees as well as the delinquent contributions. The record shows that the fringe benefit contributions for the 546 hours worked by the four Frontier-West employees involved were delinquent, pursuant to the trust agreements, in that they were not paid by the 20th day of the calendar month when they were due. The trust agreements obligate an employer delinquent in paying fringe benefit contributions to pay liquidated damages and interest. In addition, the 546 unreported hours resulted in a reporting error by Frontier-West which was greater than five percent of the total

10

hours reported: under the trust agreements, the magnitude of the reporting error obligated Frontier-West to bear the cost of examination of its payroll records.

At the time Frontier-West received the "uncontested" portion of the audit, it had a contractual obligation to pay the $2,476.87 in contributions, liquidated damages, interest and audit fees set forth in that audit. Performance according to the terms of the trust agreements required payment of $2,476.87. The $1,730.45 tendered by Frontier-West constituted merely an offer of partial performance and, thus, had no effect on its contractual obligations under § 28-1-1203, MCA. Audit Services specifically notified Frontier-West that its check was unacceptable and never deposited the check or reduced it to money. Given Frontier-West's clear contractual obligations on the record before us, we hold that the District Court did not err in awarding judgment to Audit Services for liquidated damages, interest and audit fees.

## III.

Did the District Court err in awarding attorney's fees to Audit Services?

Frontier-West asserts that the District Court erred in determining that Audit Services was the prevailing party in this action and, therefore, abused its discretion in awarding attorney's fees to Audit Services. Citing Medhus v. Dutter (1979), 184 Mont. 437, 603 P.2d 669, Frontier-West contends that the prevailing party is the one which successfully prosecutes or defends the main issue of a suit. It contends that the main issue in this case was

11

whether Frontier-West owed fringe benefit contributions for the hours worked by the owners' sons as reflected in the contested portion of the revised audit. It argues that, because Audit Services dismissed the owners' sons issue, Frontier-West prevailed on the main issue of the case and is entitled to attorney's fees. Frontier-West's reliance on the "main issue" approach is misplaced.

Audit Services brought this action under ERISA to collect contributions due under the trust agreements. An action to collect delinquent contributions is specifically authorized by 29 U.S.C. § 1145. The provisions governing attorney's fees under ERISA are set forth in 29 U.S.C. § 1132(g) as follows:

> (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

> . . .

> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant . . .

> . . .

Under the above statute, attorney's fees are discretionary in most actions under the subchapter in accordance with § 1132(g)(1). However, in actions by a fiduciary for or on behalf of plan to enforce § 1145, attorney's fees are mandatory if judgment is awarded in favor of the plan. Operating Engineers Pension Trust v. Reed (9th Cir. 1984), 726 F.2d 513. Because this is an action to enforce § 1145, the only question is whether this is an action by

12

a fiduciary for or on behalf of a plan in which judgment in favor of the plan was awarded.

Here, the trustees or fiduciaries of the Trust Funds irrevocably assigned ownership of their claims against Frontier-West to Audit Services. As assignee of the claims against Frontier-West, Audit Services is the proper party plaintiff. Audit Services, Inc. **v.** Rolfson (9th Cir. **1981), 641** F.2d **757.** In addition, Audit Services was substituted as a new party to the legal relations with respect to the subject matter and acquired the trustees' right to performance from Frontier-West. **4** Corbin on Contracts, **§ 861,** at **421-22 (1963).** Judgment was awarded to Audit Services for delinquent contributions, liquidated damages, interest and audit fees related to the uncontested portion of the audit. Therefore, the District Court's judgment falls within the mandatory attorney's fees provision of **§ 1132(g)** (2) and not the discretionary provision of **§ 1132(g)** (1). Accordingly, we hold that the District Court properly determined that Audit Services was entitled to attorney's fees.

Frontier-West further asserts that even if the District Court properly determined that Audit Services was entitled to attorney's fees, it abused its discretion by awarding Audit Services attorney's fees in the amount of **$14,266.** It argues that Audit Services requested the specific dollar amount of **$2,100** in its complaint for attorney's fees and, because the complaint was never amended to account for other attorney's fees, Audit Services should be entitled to a maximum of $2,100. We disagree.

13

In R & W Leasing v. Mosher (1981), 195 Mont. 285, 636 P.2d 832, we held that pursuant to Rule 15(b), M.R.Civ.P., relating to amendments to the pleadings to conform to the evidence, the district court did not err in awarding greater attorney's fees than were originally requested in the complaint even though the complaint was not formally amended. We concluded that no error occurred because a motion for attorney's fees, along with a supporting affidavit, had been filed with the court and, in conformity with the motion, a hearing on attorney's fees was held. In this case, we find no error on the part of the District Court in awarding a greater amount of attorney's fees than requested in the complaint. An evidentiary hearing was held, with full notice to both parties, on the precise issue of the amount of attorney's fees to be awarded. Audit Services presented an affidavit in support of the amount of attorney's fees requested, as well as testimony which was subject to cross-examination. At no time did Frontier-West object to the evidence on the basis that it did not conform to the dollar amount requested in the complaint.

Frontier-West, citing Northwestern Nat'l Bank v. Weaver-Maxwell, Inc. (1986), 224 Mont. 33, 729 P.2d 1258, also contends that where a lawsuit involves multiple claims and multiple theories, an award of attorney's fees must be based only on the time spent on those claims and theories on which the prevailing party was successful. It maintains that the District Court abused its discretion in awarding Audit Services $14,266 in attorney's fees because substantially all of the proceedings before the court

14

centered around the owners' sons fringe benefit contribution issue which ultimately was dismissed by Audit Services.

The Ninth Circuit Court of Appeals has held that the correct method for calculating the _amount_ of attorney's fees under ERISA is to use the "lodestar/multiplier" approach adopted by the United States Supreme Court in Hensley v. Eckerhart (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. D'Emanuele v. Montgomery Ward & Co., Inc. (9th Cir. 1990), 904 F.2d 1379. The lodestar/multiplier approach essentially contains two parts.

First, the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. _D'Emanuele_, 904 F.2d at 1383. In determining the number of hours reasonably expended, the court, in addition to other factors which may be appropriate under the circumstances, should consider those factors identified in Kerr v. Screen Extras Guild, Inc. (9th Cir. 1975), 526 F.2d 67, _cert. denied_, (1976), 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195, which have been held to be subsumed in the lodestar calculation. See Blum v. Stenson (1984), 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891; Chalmers v. City of Los Angeles (9th Cir. 1986), 796 F.2d 1205. Those factors are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained and the superior performance of counsel. _Blum_, 465 U.S. at 898-90.

The "results obtained" factor is particularly important where a party is deemed prevailing even though it succeeded on only some

of the claims for relief.  Hensley, **461** U.S. at **434.**  Unrelated claims must be treated as if they had been raised in separate lawsuits and, thus, no attorney's fees may be awarded for services on an unrelated, unsuccessful claim.  However, where a party's claims involve a common core of facts or are based on related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."  Hensley, **461** U.S. at **435.**  In such a situation, the court "should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation."  Hensley, **461** U.S. at **435.**

Where a party has obtained excellent results, counsel should recover a full compensatory fee; the award should not be reduced simply because the party failed to prevail on every contention raised in the lawsuit.  On the other hand, if a party has achieved limited success, a full compensatory fee may be an excessive amount even where the claims were interrelated.  Hensley, **461** U.S. at **435-36.**  "The court necessarily has discretion in making this equitable judgment.''  Hensley, **461** U.S. at **437.**

Once the number of hours has been set, the court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees.  D'Emanuele, **904** F.2d at **1384.**  This determination is not made by reference to the rate actually charged by counsel, but rather to the market rate in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.  D'Emanuele, **904** F.2d

**16**

at 1384.

Once the lodestar amount has been determined, the second part of the "lodestar/multiplier" approach allows the court to increase or decrease that amount based on the <u>Kerr</u> factors which are not subsumed in the initial lodestar calculation. <u>D'Emanuele</u>, 904 F.2d 1383. However, the initial lodestar amount is presumed to constitute a reasonable fee; thus, any upward or downward adjustments to that amount are rare. <u>D'Emanuele</u>, 904 F.2d at 1383.

Although fee awards are left to the discretion of the district court, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." <u>Hensley</u>, 461 U.S. at 437. The Ninth Circuit, in discussing what constitutes a concise but clear explanation, has stated that "[c]ourts need not attempt to portray the discretionary analyses that leads to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into the exercises of discretion to enable [the appellate court] to discharge [its] reviewing function.'' <u>Cunningham</u> v. County of Los Angeles (9th Cir. 1988), 879 F.2d 481, 485, <u>cert.</u> <u>denied</u>, (1990), 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773.

Our review of the award of $14,266 in attorney's fees under the "lodestar/multiplier" approach does not reveal an abuse of discretion on the part of the District Court. The court conducted an evidentiary hearing on the issue of attorney's fees. Thereafter, it concluded that Audit Services was entitled to attorney's fees pursuant to ERISA, 29 U.S.C. § 1132(g)(2), which

17

authorizes an award of <u>reasonable</u> attorney's fees.  The court found that Audit Services' counsel expended 222.5 attorney's hours and 3.2 paralegal hours during the litigation of this action.  It further found that the number of hours expended was reasonable considering the character of the legal services rendered, the labor and time involved, the character and importance of the litigation, and counsel's standing in the profession.  The District Court stated that an additional basis for its finding that the number of hours expended was reasonable was Frontier-West's conduct in prolonging the litigation prior to such time as present counsel appeared on its behalf:

> Unfortunately for the parties herein and the Court, many of defendant's motions were repetitive and, under the law of the case established by the Court's Orders, lacked merit.  The litigation seemed to go on and on because of defendant's contradictory positions and efforts to reargue settled issues.  The defendant filed three Motions for Summary Judgment, a Motion for Relief From Order and a Motion for Reconsideration.  The repetitive and successive motions together with plaintiff's Motion to Compel and Motion for Summary Judgment necessitated four hearings in Missoula.

With regard to the hourly rate, the District Court found that Audit Services' counsel possesses the professional skill and familiarity with labor law commensurate with his fifteen years' experience in handling employee benefit plan collections.  The court determined that counsel's requested hourly rates of $65 for attorney's time and $30 for paralegal time were "[r]easonable under the circumstances and well within the range of fees charged by attorney's [sic] in Montana."  Because Frontier-West had already paid a court ordered sanction of $292.50 for attorney's fees, the

**18**

total amount of attorney's fees owing to Audit Services was determined to be $14,266.

Although the District Court did not specifically rely on the "lodestar/multiplier" approach in setting the amount of attorney's fees, it substantially complied with that standard. As required under D'Emanuele, the court calculated the "lodestar" amount, $14,266, by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. It considered several factors similar to those Kerr factors subsumed in the lodestar calculation, including the complexity of the issues, the special skill and experience of counsel, the quality of representation and the range of fees charged in Montana.

Audit Services' original claims were for delinquent contributions, liquidated damages, interest, audit fees and attorney's fees relating to both the uncontested portion of the audit and the contested owners' sons portion of the audit. These claims all arose from the same core of facts: Frontier-West's failure and refusal to pay certain contributions in accordance with the terms of the trust agreements. While the degree of success is important in calculating attorney's fees even where all the claims are interrelated, the District Court placed significant emphasis on Frontier-West's conduct in prolonging the litigation. As noted earlier, the court necessarily has discretion in making the equitable judgment of whether the fees requested are excessive. Given the District Court's concise but clear explanation of its reasons for the fee award, we hold that the court did not abuse its

discretion in setting the amount of attorney's fees at $14,266.

We note that the District Court, after calculating what was effectively the lodestar amount, did not consider whether to apply a multiplier to either increase or decrease the award. However, we conclude that the court's failure to consider a multiplier is not fatal to its award of fees in this action since, as noted earlier, the lodestar amount is presumed to constitute a reasonable fee and any adjustments to that amount are rare. D'Emanuele, 904 F.2d at 1383.

IV.

Is Audit Services' claim estopped due to a failure to act upon constructive notice by Frontier-West?

Frontier-West contends that the Trust Funds were on notice in the summer of 1987 that it was not paying contributions for the hours worked by the owners' sons and, therefore, Audit Services "is estopped from asserting that Frontier-West owes trust fund contributions for the sons of the owners. . . ." While the argument is not well presented, Frontier-West is apparently asserting that a timely investigation by the Trust Funds regarding its intent to pay contributions for the owners' sons would have mitigated its liability.

The principles of equitable estoppel apply to employee benefit plans. Dockray v. Phelps Dodge Corp. (9th Cir. 1986), 801 F.2d 1149, 1155. Estoppel is available against a party "[w]ho has made a knowing false representation, or concealment of material facts, to a party ignorant of the true facts, with the intention that the

20

other party should rely on the representation, and the other party actually and detrimentally relies on it." Dockray, 801 F.2d at 1155.

The record shows that the Trust Funds received a remittance report from Frontier-West dated August 18, 1987 which stated only that the "sons of owners" were not reported. Frontier-West seems to rely on the Trust Fund's lack of action between the summer of 1987 and February 1988 as a basis for estoppel. However, there is no evidence in the record that would give rise to estoppel.

It was not until the audit in February 1988 that the Trust Funds obtained information regarding the owners' sons such as which sons were involved, whether they performed laborer work under the labor agreement and the number of hours they worked. At that time, it is clear that the Trust Funds requested full payment of the contributions. Stated simply, the record is devoid of any evidence that the Trust Funds had an obligation to act before the audit of Frontier-West's payroll records, made a knowing false representation to Frontier-West or concealed any material facts from Frontier-West. In any event, the owners' sons issue did not result in liability to Frontier-West; thus, there was no detrimental reliance on its part.

As a final matter, Audit Services has requested attorney's fees in responding to this appeal. The attorney's fees provision contained in 29 U.S.C. § 1132(g)(2) applies to attorney's fees on appeal. Operating Engineers Pension Trusts v. B & E Backhoe (9th Cir. 1990), 911 F.2d 1347, 1356. Since these fees are mandatory,

21

Audit Services is entitled to reasonable attorney's fees on appeal.

Affirmed and remanded for determination of reasonable attorney's fees on appeal.

_____
                        Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

22

March 3, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Christopher B. Swartley
DATSOPOULOS, MacDONALD & LIND
201 West Main, Suite 201
Missoula, MT 59802

Dennis Tighe
CURE, BORER & DAVIS, P.C.
P.O. Box 2103
Great Falls, MT 59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
   Deputy