No. 92-563

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MAJORIE IHLER, VICTOR FOURWINDS, JOEL
JOHNSON, KAREN HALLBERG, TOM BRANSTETTER,
DANINE ROSE, SHARON GREGOR, CHARLES KIMBALL,
DAVID MALINGO, BELINDA KITTLE, BYRON MYERS,
and THERESA WHISENNAND,

        Plaintiffs, Respondents,
           and Cross-Appellants

    -vs-

CURT CHISHOLM, DIRECTOR OF THE DEPARTMENT
OF INSTITUTIONS FOR THE STATE OF MONTANA,
CARROLL SOUTH, INDIVIDUALLY AND AS PAST
DIRECTOR OF THE DEPARTMENT OF INSTITUTIONS
FOR THE STATE OF MONTANA, JANE EDWARDS,
SUPERINTENDENT OF MONTANA STATE HOSPITAL
AND THE STATE OF MONTANA,

        Defendants, Appellants,
           and Respondents on Cross-Appeal.

FILED

JUN 29 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        P. Keith Keller; Keller, Reynolds, Drake, Johnson
        & Gillespie, Helena, Montana

        Hon. Joseph P. Mazurek, Attorney General, Kimberly
        A. Kradolfer, Assistant Att. General, Helena, Montana

        James B. Obie, Dept. of Institutions, Helena, Montana

        Bill Gianoulias, Tort Claims Division, Helena, Montana

For Respondents:

Jeffrey T. Renz, Legal Director, American Civil Liberties Union of Montana, Billings, Montana

Leonard Rubenstein and Ira Burnim, Mental Health Law Project, Washington, D.C.

Allen Smith, Mental Disabilities Board, Warm Springs, Montana

Andrea Olsen and Mary Gallagher, Mental Health Protection and Advocacy, Warm Springs, Montana

Helen Hershkoff and Victor Bolden, American Civil Liberties Union Foundation, New York, New York

James H. Goetz; Goetz, Madden & Dunn, Bozeman, Montana

W. William Leaphart  , Attorney at Law, Helena, Montana

Submitted on Briefs:   April 30, 1993

Decided:   June 29, 1993

Filed:

_Clerk_

Justice Karla M. Gray delivered the Opinion of the Court.

Appellants Chisholm, et al., appeal from findings of fact, conclusions of law and order of the First Judicial District, Lewis and Clark County, awarding attorneys' fees. Respondents Ihler, et al., cross-appeal from the same judgment. We reverse and remand.

The dispositive issue on appeal is whether the District Court erred in computing the award of attorneys' fees.

The parties are before this Court appealing only the award of attorneys' fees which followed lengthy and complex civil rights litigation. Accordingly, only a brief recitation of the facts surrounding the actual litigation is necessary.

On May 16, 1988, twelve patients (the Patients) of the Montana State Hospital at Warm Springs filed a class action against Curt Chisholm, Director of the Department of Institutions, Carroll South, past Director of the Department of Institutions, Jane Edwards, Superintendent of the Hospital and the State of Montana (collectively, the Hospital). The Patients sought damages and injunctive relief for civil rights violations under state and federal law.

The District Court bifurcated the issue of damages from the injunctive portion of the case; the damages issue settled. A bench trial on the injunctive relief began on May 6, 1991, and lasted three weeks. During trial, the court heard thirty-five witnesses, toured the hospital and admitted over 100 exhibits.

In its final order issued September 26, 1991, the District Court determined that the Patients primarily had challenged the

3

following three areas of hospital operation:

- the use of seclusion and restraint against patients
- the condition and treatment of patients at the Xanthopoulus Treatment Facility (the forensic unit)
- the adequacy and number of professional staff.

Although the District Court concluded that the Hospital had made great strides in improving the conditions during the three years after the lawsuit was filed, deficiencies nonetheless remained that had the effect of depriving the Patients of their civil rights. The court concluded that the Hospital was deficient in its use of seclusion and restraint and in keeping patients in the forensic unit long after they should have been transferred to a less restrictive environment. It also concluded that the Hospital had given inadequate treatment and therapy in the forensic unit and employed insufficient numbers of clinical staff. The court then ordered the Hospital to correct the deficiencies and submit a report demonstrating compliance within three months of the order.

Following entry of the District Court's decision and order, the Patients moved for attorneys' fees and expenses in the amount of $2,071,856.61 pursuant to § 42 U.S.C. 1988, the Civil Rights Attorney's Fees Awards Act of 1976. On April 20, 1992, the court entered an interim order awarding the Patients $415,950.74. The District Court issued findings of fact and conclusions of law to support the interim order on August 13, 1992.

The District Court first determined the reasonable hourly rates for ten attorneys that had represented the Patients during the litigation; the rates ranged from $75 per hour to $110 per hour. In making this determination, the court concluded that the

4

Patients had not established that out-of-state counsel was necessary and based its rates on Montana standards. The court then found that the Patients had significantly overstaffed the case with counsel, and reduced each attorney's compensable hours by varying percentages due to duplication and excessive travel time. The District Court also excluded all hours of attorney Mary Gallagher (Gallagher) for the period she was employed by the State of Montana.

By multiplying the reasonable hourly rates by the reasonable compensable hours, the District Court reached the "lodestar" attorneys' fees amount. The "lodestar" expression was adopted by the United States Supreme Court as the correct method for calculating attorneys' fees under federal fee-shifting statutes; it consists of the multiplication of a reasonable hourly rate by the number of hours reasonably expended on the litigation. See Audit Services, Inc. v. Frontier-West, Inc. (1992), 252 Mont. 142, 153, 827 P.2d 1242, 1250.

The District Court then reduced the lodestar amount by 25% based on its finding that the Patients did not prevail on many of the issues in their original complaint and had achieved limited success on the issues narrowed for trial. Lastly, the District Court declined to increase the lodestar by 150% for "risk of contingency," as requested by the Patients. Instead, the court concluded that the Patients had failed to show that no Montana attorneys would have taken the case, but did show that Montana attorneys are at least reluctant to accept civil rights cases

5

without the prospect of an enhanced fee. Based on that conclusion, the District Court increased the lodestar amount by 50% for risk of contingency. The court also awarded the Patients their attorneys' fees incurred in preparing the motion for fees and their costs for the lawsuit. Entry of judgment was filed on September 1, 1992.

The Patients then moved to amend the order on attorneys' fees, contending that the District Court should have allowed the hourly rates of the out-of-state attorneys instead of increasing the lodestar by 50% for contingency. In the Hospital's response to the motion, it also urged the District Court to reconsider its order due to the recent United States Supreme Court decision in City of Burlington v. Dague (1992), 505 U.S. ___, 112 S.Ct. 2638, 120 L.Ed.2d 449, which held that enhancement of attorneys' fees awards for contingency was not permitted under federal fee-shifting statutes. The District Court denied the motion to amend without explanation on October 7, 1992. Both parties appeal.

Did the District Court err in computing attorneys' fees?

The Hospital contends that the District Court erred in its computation of attorneys' fees by refusing to reconsider its order in light of Dague. Neither party disputes the applicability of Dague to the present case, and we agree that a change in the law between the trial court decision and the appellate decision requires the appellate court to apply the new law. Haines Pipeline Constr., Inc. v. Montana Power Co. (1991), 251 Mont. 422, 433, 830 P.2d 1230, 1238. Further, the Patients cross-appeal several issues regarding the District Court's computation of the attorneys' fees

6

award. As the majority of the Patients' concerns will be resolved based on our discussion of Dague, we initially examine Dague's effect on the award of attorneys' fees in this case.

In Dague, the plaintiff prevailed in a suit under the Solid Waste Disposal Act, which allows the substantially prevailing party to recover attorneys' fees under 42 U.S.C. § 6972(e). In computing the award of attorneys' fees, the federal district court determined the lodestar amount by multiplying the reasonable hours expended by the reasonable hourly rate. It then concluded that a 25% contingency enhancement of the lodestar amount was appropriate, stating:

> [the plaintiff's] risk of not prevailing was substantial and that absent an opportunity for enhancement, [the plaintiff] would have faced substantial difficulty in obtaining counsel of reasonable skill and competence in this complicated field of law.

Dague, 505 U.S. at ___, 112 S.Ct. at 2640, 120 L.Ed.2d at 455. The Second Circuit Court of Appeals affirmed.

The United States Supreme Court first explained that there is a "strong presumption" that an award of attorneys' fees figured using the lodestar approach, without any adjustments, is a reasonable fee. Dague, 505 U.S. at ___, 112 S.Ct. at 2641, 120 L.Ed.2d at 456. The Supreme Court then concluded that contingency enhancement would likely duplicate, in substantial part, factors already subsumed in the lodestar.

The Supreme Court reasoned that the risk of contingency in a particular case depends on (1) the legal and factual merits of the claim and (2) the difficulty in establishing those merits. Dague,

7

505 U.S. at \_\_\_, 112 S.Ct. at 2641, 120 L.Ed.2d at 456. According to the Supreme Court, the first factor is not reflected in the lodestar and should play no part in the calculation of attorneys' fees. The second factor, however, is ordinarily reflected in the lodestar--either in the higher number of hours expended to overcome the difficulty or in the higher hourly rate of the attorney skilled and experienced enough to do so. Dague, 505 U.S. at \_\_\_, 112 S.Ct. at 2641, 120 L.Ed.2d at 456. The Court concluded that taking into account the difficulty of the case again through contingency enhancement resulted in double-counting. Dague, 505 U.S. at \_\_\_, 112 S.Ct. at 2641, 120 L.Ed.2d at 457. On that basis, the United States Supreme Court held that enhancement for contingency was not permitted under the fee-shifting statute of the Solid Waste Disposal Act. Dague, 505 U.S. at \_\_\_, 112 S.Ct. at 2643-4, 120 L.Ed.2d at 459.

Although Dague's analysis involved 42 U.S.C. § 6972(e), the Supreme Court specifically referred to 42 U.S.C. § 1988, the fee-shifting statute at issue here. Dague, 505 U.S. at \_\_\_, 112 S.Ct. at 2641, 120 L.Ed.2d at 456. Furthermore, the Ninth Circuit Court of Appeals has since applied Dague in a civil rights context, and concluded that the typical federal fee-shifting statutes do not allow for upward adjustments of a lodestar amount for contingency. Davis v. City and County of San Francisco (9th Cir. 1992), 976 F.2d 1536, 1549. Therefore, we apply the Supreme Court's Dague analysis to the present case.

Given the Supreme Court's mandate in Dague, we conclude that

the District Court erred in enhancing the Patients' award of attorneys' fees by 50% for contingency and remand with instructions to delete this increase from the lodestar amount. Further, as stated in Daque, some accounting for the risk of contingency is normally figured into the computation of the lodestar, by either greater hours claimed or higher hourly wages. In this case, we cannot determine if the District Court would have reached the same reasonable hourly rates and reasonable compensable hours if it had not subsequently increased the lodestar amount by 50% for contingency. On remand, therefore, the District Court should recompute the lodestar amount--the reasonable hourly rates multiplied by the reasonable compensable hours--in light of the principles set forth in Daque.

Because of our remand, we need not discuss the issues raised by the Patients regarding hourly rates and compensable hours. However, the Patients raise two additional concerns which are not affected by our remand for recalculation of the lodestar. First, the Patients argue that the District Court erred in subsequently reducing the lodestar by 25% due to lack of success at trial. They assert that the District Court improperly "counted claims" instead of looking at the overall results obtained by the Patients.

We will not reverse a district court's computation of attorneys' fees under the lodestar approach absent an abuse of discretion. Audit Services, 827 P.2d at 1250-1, citing Hensley v. Eckerhart (1983), 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40, 52. The "results obtained" by the prevailing party is

9

an important factor to consider when determining whether a full compensatory fee is warranted. See Audit Services, 827 P.2d at 1250. For example, if a party has obtained excellent results, counsel should recover a full compensatory fee. On the other hand, if a party has achieved limited success, a full compensatory fee may be excessive even where the claims were interrelated. Audit Services, 827 P.2d at 1250, citing Hensley, 461 U.S. at 435-6, 103 S.Ct. at 1940-1, 76 L.Ed.2d at 52. In its discretion, the district court may attempt to identify specific hours that should be eliminated or may simply reduce the lodestar to account for limited success. Hensley, 461 U.S. at 436-7, 103 S.Ct. at 1941, 76 L.Ed.2d at 52.

Here, the District Court determined that the Patients achieved limited success at trial due in part to the improvements made by the Hospital subsequent to the filing of the complaint. While the court recognized the Patients' assertion that the lawsuit served as a catalyst for the changes, it also determined that the Patients were unsuccessful in two significant areas: their assertion of a constitutional right to treatment in the community and claims relating to the physical environment of both the old and new forensic units. The court concluded, therefore, that a fully compensatory fee would be excessive and reduced the lodestar by 25%. As Hensley specifically allows for a downward adjustment of the lodestar for limited success, we find no abuse of discretion in the District Court's analysis and subsequent 25% reduction of the lodestar.

10

Second, the Patients argue that the District Court erred in denying recovery for Gallagher's attorney's fees while she was employed by the State of Montana. In its findings and conclusions, the District Court concluded that because Gallagher was a State employee from 1987 through April of 1991, the Patients could not recover attorney's fees for her work during that period from the State. The Patients assert that the court's conclusion and resulting reduction in the attorneys' fees award was an abuse of discretion. We agree.

The District Court's initial assertion that Gallagher was "employed by the State" for the specified period is not at all clear-cut. The Montana Advocacy Program (MAP) received a federally funded grant from the National Institute of Mental Health, which was administered through the Montana Mental Disabilities Board of Visitors (the Board), a state agency. Under the agreement between MAP and the Board, the Board agreed to maintain an attorney at the Hospital; this position was filled by Gallagher. Therefore, although the State of Montana disbursed Gallagher's wages, funding was provided by MAP, through its federal grant. We conclude, however, that as a matter of law, the source of Gallagher's wages is irrelevant in determining recoverable attorney's fees.

It is well settled that Congress intended legal service programs to receive fees under 42 U.S.C. § 1988. Shadis v. Beal (3d. Cir. 1982), 685 F.2d 824, 830. It is also clear that Congress contemplated that states and state officials would often be the targets of civil rights actions and intended that attorneys' fees

11

be collected from the funds of the state agency. Shadis, 685 F.2d at 830. In Shadis, the state argued that because it funded the legal services program that represented the prevailing party, it would be unfair to make the state "pay twice." The Third Circuit Court of Appeals characterized that argument as a rhetorical ploy, and stated:

> The Commonwealth does not pay "twice" when it violates someone's civil rights and is then forced to pay attorneys' fees. It pays only once--as a violator of civil rights. Its role as a provider of public services is distinct from its role as a defendant in a civil rights case and has no bearing on the question of reimbursing individual citizens for individual wrong brought against them.

Shadis, 685 F.2d at 833. Addressing an identical argument, the Ninth Circuit Court of Appeals concluded that the issue of "fairness" had been resolved by Congress, because awards of attorneys' fees to state-funded legal services organizations were contemplated by Congress and serve the purpose for which the Act was adopted. Dennis v. Chang (9th Cir. 1980), 611 F.2d 1302, 1307.

In the present case, the District Court concluded that Gallagher was a state employee and, therefore, was not entitled to an award of attorney's fees from the State. The fact that Gallagher's wages were disbursed through the State or paid by public funds is irrelevant in determining whether an award for attorneys' fees is proper. Leeds v. Watson (9th Cir. 1980), 630 F.2d 674, 677. Because the District Court inappropriately relied on the source of Gallagher's wages in its decision to deny attorney's fees for the period she worked for the State, we reverse that conclusion and on remand, direct the court's attention to the

12

cases cited herein.

In sum, we remand for redetermination of the lodestar amount in light of the United States Supreme Court's decision in Dague. Although we conclude that the District Court did not err in reducing the lodestar by 25% for the Patients' limited success, we conclude that the District Court abused its discretion in denying recovery of Gallagher's attorney's fees for the period she was employed by the State.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

June 29, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

P. Keith Keller
Keller, Reynolds, Drake, Johnson & Gillespie
38 South Last Chance Gulch
Helena, MT  59601

Hon. Joseph P. Mazurek, Attorney General
Kimberly A. Kradolfer, Assistant
215 N. Sanders, Justice Building
Helena, MT  59620

James B. Obie
Department of Institutions
1539  11th Avenue
Helena, MT  59620

Bill Gianoulias
Tort Claims Division
Room 111, Mitchell Building
Helena, MT  59620

Leonard Rubenstein and Ira Burnim
Mental Health Law Project
1101  15th Street, N.W., Suite 1212
Washington, D.C.  20005

Allen Smith
Mental Disabilities Board
P. O. Box 177
Warm Springs, MT  59756

Ms. Helen Hershkoff and Mr. Victor Bolden
American Civil Liberties Union Fd.
132 West 43rd Street
New York, New York  10036

Jeffrey T. Renz, Legal Director
American Civil Liberties Union of MT
724 Grand Avenue
Billings, MT 59101

Ms. Andrea Olsen and Ms. Mary Gallagher
Mental Health Protection and Advocacy
P. O. Box 177
Warm Springs, MT 59756

W. William Leaphart
Attorney at Law
1 No. Last Chance Gulch #6
Helena, MT 59601

James Goetz, Esq.
Goetz, Madden & Dunn
35 N. Grand
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy