No. 98-712

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 37

298 Mont. 254

995 P. 2d 439

MARJORIE IHLER, VICTOR FOURWINDS,

JOEL JOHNSON, KAREN HALLBERG,

TOM BRANSTETTER, DANINE ROSE,

SHARON GREGOR, CHARLES KIMBALL,

DAVID MALINGO, BELINDA KITTLE,

BYRON MYERS, and THERESA WHISENNAND

Plaintiffs and Appellants,

v.

CURT CHISHOLM, DIRECTOR OF THE

DEPARTMENT OF INSTITUTIONS FOR

THE STATE OF MONTANA; CARROLL

SOUTH, INDIVIDUALLY AND AS PAST

DIRECTOR OF THE DEPARTMENT OF

INSTITUTIONS FOR THE STATE OF

MONTANA; JANE EDWARDS, SUPERIN-

TENDENT OF MONTANA STATE HOSPITAL,

and THE STATE OF MONTANA,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jeffrey T. Renz, American Civil Liberties Union of Montana;

Clinton, Montana

For Respondents:

P. Keith Keller, Keller, Reynolds, Drake, Johnson & Gillespie, P.C.;

Helena, Montana

Bill Gianoulias, Risk Management and Tort Defense; Helena, Montana

Kimberly A. Kradolfer, Agency Legal Services Bureau; Helena, Montana

Submitted on Briefs: September 2, 1999

Decided: February 11, 2000

Filed:

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1.Ihler, et al., patients of the Montana State Hospital at Warm Springs, appeal the Order on Remand of the First Judicial District Court, Lewis and Clark County. We affirm in part, reverse in part, and remand.

¶2.We restate the issues on appeal as follows:

¶3. Whether the District Court abused its discretion in denying the Patients' request for out-of-state hourly rates for their out-of-state attorneys?

¶4. Whether the District Court abused its discretion in determining the reasonable in-state hourly rate for Montana attorneys?

¶5. Whether the District Court abused its discretion by reducing the Patients' requested hours?

¶6. Whether the District Court abused its discretion by calculating Ms. Gallagher's fees at her 1991 hourly rate?

¶7. Whether the District Court erred in denying the Patients' attorney fees incurred on appeal?

¶8. Whether the District Court abused its discretion by not enhancing the lodestar to reflect the undesirability of the case?

FACTUAL BACKGROUND

¶9.Because this is the second time we have heard this case on appeal, we restate the facts as contained in *Ihler v. Chisholm* (1993), 259 Mont. 240, 855 P.2d 1099 (hereinafter *Ihler I*):

¶10.On May 16, 1988, 12 patients of the Montana State Hospital at Warm Springs filed a class action against Curt Chisholm, Director of the Department of Institutions, Carroll South, former Director of the Department of Institutions, Jane Edwards, Superintendent of the Hospital, and the State of Montana (collectively, the Hospital). The Patients sought

damages and injunctive relief for civil rights violations under state and federal law.

¶11.The District Court bifurcated the issue of damages from the injunctive portion of the case; the damages issue settled. A bench trial on the injunctive relief began on May 6, 1991, and lasted three weeks. During trial, the court heard 35 witnesses, toured the hospital and admitted over 100 exhibits.

¶12.In its final order issued September 26, 1991, the District Court determined that the Patients primarily had challenged the following three areas of hospital operation:

1. the use of seclusion and restraint against patients;

2. the condition and treatment of patients at the Xanthopoulus Treatment Facility (the forensic unit); and

3. the adequacy and number of professional staff.

¶13.Although the District Court concluded that the Hospital had made great strides in improving the conditions during the three years after the lawsuit was filed, deficiencies nonetheless remained that had the effect of depriving the Patients of their civil rights. The court concluded that the Hospital was deficient in its use of seclusion and restraint and in keeping patients in the forensic unit long after they should have been transferred to a less restrictive environment. It also concluded that the Hospital had given inadequate treatment and therapy in the forensic unit and employed insufficient numbers of clinical staff. The court then ordered the Hospital to correct the deficiencies and submit a report demonstrating compliance within three months of the order.

¶14.Following entry of the District Court's decision and order, the Patients moved for attorney fees and expenses in the amount of $2,071,856.61 pursuant to 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976. On April 20, 1992, the court entered an interim order awarding the Patients $415,950.74 for attorney fees and costs. The District Court issued findings of fact and conclusions of law to support the interim order on August 13, 1992.

¶15.The District Court first determined the reasonable hourly rates for ten attorneys that had represented the Patients during the litigation; the rates ranged from $75 per hour to $110 per hour. In making this determination, the court concluded that the Patients had not

established that out-of-state counsel was necessary and based its rates on Montana standards. The court then found that the Patients had significantly overstaffed the case with counsel, and reduced each attorney's compensable hours by varying percentages due to duplication and excessive travel time. The District Court also excluded all hours of attorney Mary Gallagher for the period she was employed by the State of Montana.

¶16.By multiplying the reasonable hourly rates by the reasonable compensable hours, the District Court reached the "lodestar" attorney fees amount. The "lodestar" expression was adopted by the United States Supreme Court as the correct method for calculating attorney fees under federal fee-shifting statutes; it consists of the multiplication of a reasonable hourly rate by the number of hours reasonably expended on the litigation. *See Audit Serv., Inc. v. Frontier-West, Inc.* (1992), 252 Mont. 142, 153, 827 P.2d 1242, 1250.

¶17.The District Court then reduced the lodestar amount by 25 percent based on its finding that the Patients did not prevail on many of the issues in their original complaint and had achieved limited success on the issues narrowed for trial. Lastly, the District Court declined to increase the lodestar by 150 percent for "risk of contingency," as requested by the Patients. Instead, the court concluded that the Patients had failed to show that no Montana attorneys would have taken the case, but did show that Montana attorneys are at least reluctant to accept civil rights cases without the prospect of an enhanced fee. Based on that conclusion, the District Court increased the lodestar amount by 50 percent for risk of contingency. The court also awarded the Patients their attorney fees incurred in preparing the motion for fees and their costs for the lawsuit. Entry of judgment was filed on September 1, 1992.

¶18.The Patients then moved to amend the order on attorney fees, contending that the District Court should have allowed the hourly rates of the out-of-state attorneys instead of increasing the lodestar by 50 percent for contingency. In the Hospital's response to the motion, it also urged the District Court to reconsider its order due to the recent United States Supreme Court decision in *City of Burlington v. Dague* (1992), 505 U.S. 557, 112 S. Ct. 2638, 120 L. Ed. 2d 449, which held that enhancement of attorney fees awards for contingency was not permitted under federal fee-shifting statutes. The District Court denied the motion to amend without explanation on October 7, 1992.

¶19.The Hospital appealed and the Patients cross-appealed. On appeal, we held that the District Court erred in enhancing the lodestar by 50 percent for contingency risks and remanded with instructions to eliminate this enhancement. We observed that some

accounting for the risk of contingency is normally figured into the computation of the lodestar, by either greater hours claimed or higher hourly wages, and could not determine whether the District Court would have reached the same lodestar figure if it had not subsequently enhanced the lodestar to account for contingent risks. Accordingly, we remanded the case to the District Court in order for it to recompute the lodestar. Because of our remand, we declined to address issues raised by the Patients concerning the compensable hours and reasonable hourly rates. *Ihler I*, 259 Mont. at 246, 855 P.2d at 1013. We also affirmed the District Court's reduction of the lodestar by 25 percent because of the limited success of the Patients on the merits of their claims and reversed the District Court's denial of Gallagher's fees incurred by the Patients while Gallagher was employed as an attorney for the Board of Visitors.

¶20. On remand, the Hospital filed a motion to reassess attorney fees in which it contended that the District Court need only eliminate the 50 percent enhancement for contingency and add Gallagher's fees to the lodestar in order to comply with our decision in *Ihler I*. The Patients filed a motion seeking attorney fees incurred on appeal and responded to the Hospital's motion to reassess attorney fees by requesting that the District Court entirely redetermine the lodestar figure in light of our decision in *Ihler I* by reassessing reasonable hourly rates and compensable hours and by enhancing the lodestar due to the undesirability of the case.

¶21. On September 8, 1994, the Patients filed a motion seeking the "undisputed attorneys' fees" for Gallagher. On September 15, 1994, the District Court issued an interim award of attorney fees in the amount of $89,715, reflecting the amount of Gallagher's fees not included in its initial lodestar figure. On October 30, 1994, the parties entered into a Non-Waiver, Receipt, and Indemnity Agreement by which the Hospital agreed to pay the $89,715 with the stipulation that if the District Court ultimately reduced the Patients' fee award below the amount the Hospital had already paid, the Patients would refund that amount to the Hospital.

¶22. On June 22, 1998, the District Court issued its Order on Remand. The court eliminated the 50 percent enhancement for contingency and added Gallagher's fees incurred by the Patients while Gallagher was employed by the Board of Visitors. The court did not reassess the reasonable hourly rates or compensable hours. Finally, the court denied the Patients' request for attorney fees incurred on appeal. As a result, the Patients' initial award of $339,304.59 for attorney fees was reduced to $293,485.09.

¶23. On July 14, 1998, the Patients moved to alter or amend the court's Order on Remand. On September 12, 1998, the District Court denied the Patients' motion. Patients appeal.

## STANDARD OF REVIEW

¶24. We review a District Court's award of attorney fees under 42 U.S.C. § 1988 for an abuse of discretion. *See Ihler I*, 259 Mont. at 246, 855 P.2d at 1013. A District Court abuses its discretion if its fee award is based on an inaccurate view of the law or a clearly erroneous finding of fact. *Barjon v. Dalton* (9th Cir. 1997), 132 F.3d 496, 500 (citation omitted).

## DISCUSSION

## I. THE LAW OF THE LODESTAR.

¶25. A party who prevails in an action under 42 U.S.C. § 1983 is entitled to a reasonable attorney fee under § 1988 unless special circumstances would render an award unjust. *See Hensley v. Eckerhart* (1983), 461 U.S. 424, 429, 103 S. Ct. 1933, 1937, 76 L. Ed. 2d 40, 48. The starting point for determining the amount of a reasonable fee consists of multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Ihler I*, 259 Mont. at 243, 855 P.2d at 1011 (citing *Audit Serv.*, 252 Mont. at 153, 827 P.2d at 1250). This initial amount has been referred to as the "lodestar." *See Ihler I*, 259 Mont at 243, 855 P.2d at 1011.

## A. Reasonable Hourly Rate.

¶26.. Whether the District Court abused its discretion in denying the Patients' request for out-of-state hourly rates for their out-of-state attorneys?

¶27. Under § 1988, the reasonable hourly rate is calculated according to the "prevailing market rates in the relevant community." *Barjon*, 132 F.3d at 500 (quoting *Blum v. Stenson* (1984), 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891, 900). Generally, the relevant community is the forum in which the district court sits. *Barjon*, 132 F.3d at 500 (citation omitted). However, in circumstances where it is reasonable to retain attorneys from other communities, the rates in those communities may also be considered. *See Rum Creek Coal Sales, Inc. v. Caperton* (4th Cir. 1994), 31 F.3d 169, 175 (reversing district court denial of out-of-forum rates because prevailing party acted

reasonably in selecting out-of-forum representation due to complex and politically sensitive nature of issues).

¶28.In their fee application, the Patients sought out-of-state rates for their out-of-state attorneys. The District Court stated that "it was not convinced that out-of-state representation was necessary" because the Patients had neither submitted affidavits from attorneys who had refused to accept the case, nor demonstrated that Montana attorneys were unqualified to handle such a case. Consequently, the court found that the relevant community for purposes of an award of attorney fees was the State of Montana and refused to adjust the hourly rate for the Patients' out-of-state attorneys.

¶29.The Patients contend that the District Court erred by requiring them to prove that resort to out-of-state representation was "necessary." The Patients assert that the correct standard is not whether out-of-state representation was *necessary*, but whether resort to out-of-state representation was *reasonable*. The Patients also contend that they submitted sufficient evidence of the reasonableness of seeking out-of-state representation and that this evidence was unrebutted by the Hospital.

¶30.In particular, the Patients point to the affidavits of Allen Smith and Mary Gallagher. Mr. Smith, an attorney employed by the State Mental Disabilities Board of Visitors, stated:

After discussions with Montana attorneys it was recognized that we would be unable to secure, in Montana, sufficient resources and the legal assistance that was necessary to successfully litigate this case. . . .

. . . While several Montana attorneys were interested in assisting in this litigation, we were unable to secure a commitment from Montana counsel with the available time and the legal expertise necessary for this case. There is no way this litigation could have been initiated and continued without the financial and legal assistance provided by the American Civil Liberties Union Foundation and the Mental Health Law Project.

¶31.Ms. Gallagher, also employed as an attorney for the Board of Visitors until March 8, 1991, and thereafter employed as a private attorney, stated:

When this litigation commenced . . . neither myself nor Al Smith, the Board of Visitors' co-counsel, were qualified to take on a case of this complexity or magnitude, given our level of legal experience. Our discussions with various attorneys in the state indicated that there

was no expertise in the field of mental health law in the state. Litigator Mark Connell was initially contacted and my understanding was that he would be willing to assist at times but he was not willing to be lead counsel on a case of this complexity and he was not experienced in mental health issues. Additionally, Steve Ungar, the then-president of Montana ACLU was unable to procure other counsel in Montana with any experience in this area of law. It was my experience that very few attorneys knew anything at all about the field of mental health law and the issues we were facing. I did not consider anyone in the State to be qualified to take on the case and we therefore contacted the Mental Health Law Project.

¶32. At the outset, we note that although appellate courts generally review a trial court's award of attorney fees for an abuse of discretion, the deferential review inherent in the abuse of discretion standard is inappropriate when the issue is whether a trial court applied the appropriate standard. *See Corder v. Gates* (9th Cir. 1996), 104 F.3d 247, 249 ("However, we review de novo any elements of legal analysis which figure in the district court's decision."); *Rum Creek*, 31 F.3d at 174 (deferential review modified when issue is whether district court applied the appropriate criteria); *Coleman v. Kaye* (3rd Cir. 1996), 87 F.3d 1491, 1497, *cert. denied*, 519 U.S. 1084, 117 S. Ct. 754, 136 L. Ed. 2d 691 (1997) (plenary review when district court fails to apply the appropriate standard); *Barjon*, 132 F.3d at 500 (a fee award which is based on an inaccurate view of the law is an abuse of discretion).

¶33. Upon a review of relevant case law, it appears that federal appellate courts have articulated two standards to determine whether to award out-of-forum hourly rates. Some courts have asked whether resort to out-of-forum counsel was reasonable. *See Rum Creek*, 31 F.3d at 178-79; *National Wildlife Fed'n v. Hanson* (4th Cir. 1988), 859 F.2d 313, 317-18 (affirming award of out-of-forum rates because prevailing party acted reasonably in selecting out-of-forum attorney when its local counsel was unable to take the case and nearest counsel with requisite experience in complex environmental litigation and willingness to forgo compensation temporarily was from out-of-forum); *Chrapliwy v. Uniroyal, Inc.* (7th Cir. 1982), 670 F.2d 760, 769, *cert denied*, 461 U.S. 956, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) ("Pertinent questions where, as here, a court is fixing a fee to be paid by an opponent are whether services of like quality are truly available in the locality where the services are rendered, and whether the party choosing the attorney from elsewhere acted reasonably in making that choice.").

¶34. Other courts have asked whether in-forum counsel was "unavailable." *See Barjon*, 132

F.3d at 501-02 (affirming denial of out-of-forum rates; prevailing party did not prove that local counsel was unavailable because the same declarations offered by prevailing party to prove unavailability of local counsel also revealed declarants themselves who had previously represented similar parties); *Gates v. Deukmejian* (9th Cir. 1992), 987 F.2d 1392, 1405 (affirming award of out-of-forum rates because prevailing party submitted substantial evidence demonstrating that issues were extremely complex and thus required experienced and sophisticated counsel unavailable in the forum).

¶35.Regardless of the standards articulated by other courts, "the primary concern in an attorney fee case is that the fee awarded be reasonable." *Hadix v. Johnson* (6th Cir. 1995), 65 F.3d 532, 535 (citing *Blum,* 465 U.S. at 893, 104 S. Ct. at 1545). Moreover, the standard of reasonableness is clearly explicit in the language of the statute itself. Under § 1988, a district court may "allow the prevailing party . . . a *reasonable* attorney's fee." (Emphasis added.) Accordingly, we conclude that the District Court erred. A prevailing party does not have the burden of proving that resort to out-of-forum counsel was "*necessary*"; instead, a prevailing party has the burden of proving that resort to out-of-forum counsel was reasonable. In doing so, a prevailing party is not required to submit affidavits from in-forum attorneys who refused to accept their case. Rather, a party seeking an award of out-of-forum fees must prove that legal services with whatever degree of skill may have been reasonably required by their case were not readily available at a lower charge or rate in the area where the services were to be performed. *See Chrapliwy*, 670 F.2d at 769.

¶36.We conclude that the Patients submitted sufficient evidence to demonstrate that resort to out-of-forum representation was reasonable because adequate representation was not readily available in Montana. In its findings of fact, the District Court acknowledged that this case was complex and lengthy and that the Patients submitted numerous affidavits from attorneys in Montana which demonstrated that they were reluctant to accept civil rights cases such as this one.[(1)] The Patients also submitted affidavits from Smith and Gallagher, the attorneys responsible for deciding to seek out-of-state representation, which indicated that, upon consultation with Montana attorneys, they believed there was not qualified counsel within the State with the time and expertise to devote to their case. Notably, this evidence was not rebutted by the Defendants. Under these circumstances, we do not think there is any reason to reject the numerous affidavits submitted by the Patients which demonstrate the reasonableness of seeking out-of-forum counsel. *Cf. Hanson,* 859 F.2d at 318 (noting that defendant did not controvert evidence of reasonableness of seeking out-of-state representation); *Brinker v. Guiffrida* (3d Cir. 1986), 798 F.2d 661,

668 ("We note that in statutory fee cases where an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to the hours spent or the necessity for their expenditure and declines to do so, there is ordinarily no reason for a court to disregard the uncontested affidavits of a fee applicant."); *Washington v. Philadelphia County Court of Common Pleas* (3d Cir. 1996), 89 F.3d 1031, 1036 ("Where, as here, the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward.").

¶37. Furthermore, we point out that an award of out-of-state attorney fees on remand was implicit in our holding in *Ihler I*. In *Ihler I*, we reversed the District Court's award of a 50 percent enhancement to the lodestar to reflect contingent risks. In remanding the case to the District Court, we stated:

[A]s stated in *Dague*, some accounting for the risk of contingency is normally figured into the computation of the lodestar, by either greater hours claimed or higher hourly wages. In this case, we cannot determine if the District Court would have reached the same reasonable hourly rates and reasonable compensable hours if it had not subsequently increased the lodestar amount by 50 percent for contingency. On remand, therefore, the District Court should recompute the lodestar amount--the reasonable hourly rates multiplied by the reasonable compensable hours--in light of the principles in set forth in *Dague.Ihler I, 259 Mont. at 246, 855 P.2d at 1013.*

¶38. On remand, the District Court noted that it had previously granted an enhancement because the Patients had established that without such an enhancement for contingency they would have faced substantial difficulties in finding counsel in the relevant market. However, despite explicitly acknowledging that this fact was not reflected in its initial lodestar determination--thus justifying the 50 percent enhancement--the court refused to recalculate the lodestar on remand. In *Dague*, the Supreme Court stated that enhancements for contingency are inappropriate because one of the factors motivating a contingent enhancement, the difficulty in establishing the legal and factual merits of a claim, should be subsumed in the lodestar figure either through a higher number of hours expended to overcome the difficulty, or in the higher hourly rate of an attorney skilled and experienced enough to do so. *Dague*, 505 U.S. at 562, 112 S. Ct. at 2641. We think that given our instruction to recalculate the lodestar in light of *Dague*, it was clear that the District Court should have accounted for the reluctance of Montana attorneys to accept cases like this one by making an allowance in the lodestar for out-of-state representation.

¶39.We note that the necessity of reducing the protracted costs of what other courts have referred to as the "inevitable attorney's fee proceeding" militates in favor of granting great deference to a trial court's fee award. *Ustrak v. Fairman* (7th Cir. 1988), 851 F.2d 983, 986. However, we do not want to prevent Montana citizens from being able to attract counsel with the time and expertise to represent them in actions enforcing their civil rights. *See Hadix*, 65 F.3d at 535 ("A reasonable fee is one that is adequate to attract competent counsel . . . ."). We also believe that under § 1988 losing defendants should bear the reasonable costs of actions to enforce civil rights.

¶40.For the foregoing reasons, we reverse and remand to the District Court for a redetermination of a reasonable hourly rate for attorneys Helen Hershkoff, Len Rubenstein, Ira Burnim, Susan Stefan, and Victor Bolden. In finding the reasonable hourly rate for non-Montana attorneys, the District Court shall determine the historic rate prevailing in the relevant community for similar work performed by attorneys of comparable skill, experience, and reputation based on all the evidence presently in the record.

¶41.. Whether the District Court abused its discretion in determining the reasonable in-state hourly rate for Montana attorneys?

¶42.The Patients requested the following hourly rates for Montana attorneys: between $120 to $150 for James Goetz, $125 for Jeffrey Renz, $85 for Brian Gallik, and $80 for Mary Gallagher (Andrea Olsen's affidavit does not contain an hourly rate). The District Court awarded the Patients attorney fees at the hourly rate of $75 for Brian Gallik, Andrea Olsen, and Mary Gallagher, and awarded the Patients attorney fees at an hourly rate of $110 for James Goetz and Jeffrey Renz. The District Court stated that its hourly rate determination was based on the rates requested by the Patients' Montana attorneys, the novelty and complexity of the litigation, the skill and experience of the individual attorneys, and the affidavits of Erik Thueson, Timothy Whalen, and James Reynolds.

¶43.The Patients contend that the District Court abused its discretion in determining reasonable in-state rates. In particular, the Patients contend that the prevailing rate established by the record for the least experienced attorneys such as Mr. Gallik, Ms. Gallagher, and Ms. Olsen was $80 to $95 an hour. The Patients also assert that Mr. Goetz and Mr. Renz should have been awarded their requested hourly rate because it falls within the in-state range.

¶44.As mentioned above, reasonable fees under § 1988 are normally to be calculated according to the prevailing market rates in the relevant community. *See Blum*, 465 U.S. at 895, 104 S. Ct. at 1547. The prevailing market rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon*, 132 F.3d at 502 (quoting *Chalmers v. City of Los Angeles* (9th Cir. 1986), 796 F.2d 1205, 1210-11). The fee applicant has the burden of producing satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community. *See Blum*, 465 U.S. at 895 n.11, 104 S. Ct. at 1547 n.11.

¶45.We conclude that the $75 hourly rate the court awarded the Patients for their inexperienced counsel is clearly erroneous. This rate is not consistent with the information upon which the District Court expressly relied nor is it consistent with the relevant evidence in the record. Based on the affidavits upon which the District Court expressly relied in establishing a market rate, the range of the prevailing market rate in Montana was between $80 and $150.[2] Inexperienced counsel involved in the case requested a rate of between $80 and $85 an hour. The District Court did not cite any evidence which would indicate that the hourly rates requested by inexperienced counsel were unreasonable. In fact, the evidence cited by the court indicates that the rates requested by inexperienced counsel are exactly where one would reasonably expect them to be--at the very lowest end of the prevailing range.

¶46.Counsel for the Hospital claims that these lower rates can be justified with reference to a bar survey and the rates charged by defense counsel. However, as a matter of logic, neither a general bar survey nor the particular rates charged by defense counsel could, on their own, enable the court to establish the prevailing market rate for plaintiff's civil rights work. *See Trevino v. Gates* (9th Cir. 1996), 99 F.3d 911, 925 (reversing district court's determination of a reasonable hourly rate for prevailing plaintiff because court used defense attorneys' rates as a starting point); *see also Davis v. City & County of San Francisco* (9th Cir. 1992), 976 F.2d 1536, 1547, *vacated in part on reh'g*, 984 F.2d 345 (9th Cir. 1993) (affirming exclusion of general bar survey as irrelevant to determination of prevailing rate for practitioners in same or similar market). Furthermore, the court clearly stated the facts it was relying upon in making its rate determination, making no mention of either the general bar survey or the rates charged by defense attorneys.

¶47.Accordingly, we conclude that the District Court abused its discretion by awarding an hourly rate of $75 to the Patients for the work of Mr. Gallik, Ms. Olsen, and

Ms. Gallagher. *See, e.g., Coleman*, 87 F.3d at 1509-10 (observing that a court must rely upon evidence in the record when setting attorney fees). We conclude that the rates requested by the Patients for the work of Mr. Gallik and Ms. Gallagher were reasonable hourly rates being that they were at the very lowest end of the range of rates prevailing in Montana and that the rate of $80 is a reasonable hourly rate for Ms. Olsen given her similar level of experience.

¶48.We conclude that the District Court did not abuse its discretion in awarding a $110 hourly rate for the work performed by Mr. Goetz and Mr. Renz. These fees are clearly within the range of prevailing market rates for experienced civil rights litigators as established by the affidavits submitted by the Patients and relied upon by the court.

B. Reasonable Hours.

¶49.Whether the District Court abused its discretion by reducing the Patients' requested hours?

¶50.The second factor that a trial court must determine in reaching a lodestar figure is the number of hours reasonably expended by the prevailing party's attorneys. The Patients contend that their counsel made a good faith effort to exclude inefficient and duplicative hours and that the District Court abused its discretion by reducing their billable hours further without explaining how it arrived at a specific percentage reduction.

¶51.The Supreme Court has described the determination of reasonable hours as follows:

The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94-1011, p.6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to

statutory authority." *Copeland v. Marshall* (D.C. Cir. 1980), 641 F.2d 880, 891 (en banc).

*Hensley, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.*

¶52.Following the lead of the Supreme Court, other courts have stressed that the familiarity of a trial court with the underlying litigation warrants considerable deference to its findings on such matters as whether the hours claimed by prevailing counsel are redundant. *See, e.g., Davis*, 976 F.2d at 1544 (citing *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941). We agree. Unlike determinations of the prevailing market rate or the relevant community which are capable of a more thorough review because of a trial court's necessary reliance on facts submitted to it by the parties, a trial court's determination that the hours claimed by a prevailing party are redundant or inefficient can be based entirely on its personal observations. However, this does not mean that a district court can decide arbitrarily to reduce the hours claimed by a prevailing party. A district court must provide a concise but clear explanation of the lodestar, including a discussion of the factors it relied upon in determining the number of hours reasonably expended and, if it employs a percentage reduction, how it arrived at the chosen percentage. *See Stewart v. Gates* (9th Cir. 1993), 987 F.2d 1450, 1453 (citation omitted).

¶53.In determining a reasonable number of hours, the District Court stated:

54.. This case was significantly overstaffed by Plaintiffs. For example, at times there were four Plaintiffs' attorneys present at depositions. During the trial Plaintiffs had as many as six attorneys in attendance. One attorney, Andrea Olsen, spent more than 100 hours on post-trial work, which was in addition to the significant number of hours on such work by other members of Plaintiffs' legal team; although Ms. Olsen's fee request already reflects a 25 percent reduction in the number of hours, a further reduction is warranted.

55. The use of out-of-state attorneys also resulted in additional and unnecessary hours. For example, Victor Bolden's hours include, in addition to travel time for each trip to Montana, the one-hour trip between his home and the New York airport. While travel time is generally compensable, in this case the number of hours was excessive.

56.. Two attorneys, James Goetz and Helen Herskoff, played no significant role in this case and their efforts largely duplicated the work of other attorneys. . . . .

57.. The number of hours spent on [the fee petition] is excessive, particularly in light of

Mr. Renz's skill and experience in this area. The issues are neither novel nor complex. The court finds that 25 percent of the hours requested were unnecessary.

¶58.We think that this is a sufficiently concise but clear explanation of the District Court's reason for reducing the Patient's requested hours. We do not agree with the Patient's assertion that the District Court should "rely upon the plaintiff's good faith effort [to exercise billing judgment] when it determines the basic fee." A trial court is required to independently review a submission of billable hours by a prevailing party to determine the number of hours reasonably expended. *See Deukmejian*, 987 F.2d at 1401. Furthermore, we note that the Patients have not pointed us to any specific examples where their attorneys exercised billing judgment by reducing the number of hours charged for the categories specifically noted by the District Court, namely, multiple representation at both the depositions and at trial. For example, as the Hospital points out, the Patients billed for two attorneys, Mr. Bolden and Ms. Olsen, for taking notes at trial. Accordingly, we conclude that the District Court's finding that the services the Patient's attorneys provided were inefficient or duplicative is not clearly erroneous.

¶59.However, in light of our conclusion that the Patients acted reasonably in seeking out-of-forum representation, we conclude that the District Court erred to the extent that it reduced the hours of out-of-state attorneys solely because they incurred more travel time or other "additional, unnecessary hours" as compared with what an in-state attorney would have incurred. Because it was reasonable for the Patients to seek out-of-state representation, it was also reasonable for the Patients to incur the extra expenses associated with out-of-state representation, including travel time. We remand to the District Court for a redetermination of its reduction of the hours of out-of-state counsel which were based solely on the fact that those counsel incurred travel time.

## II. GALLAGHER'S FEES.

¶60.Whether the District Court abused its discretion by calculating Ms. Gallagher's fees at her 1991 hourly rate?

¶61.In its findings of fact and conclusions of law in support of its interim order, the District Court excluded all of the fees requested by the Patients for attorney Mary Gallagher for the period she was employed by the State of Montana. On appeal, we held that the District Court abused its discretion in denying Gallagher's fees for the period she was employed by the state. *Ihler I*, 259 Mont. at 248, 855 P.2d at 1014. On remand, the

Hospital moved to reassess attorney fees given our decision in *Ihler I*. In the Hospital's memorandum in support of their motion to reassess attorney fees, dated August 24, 1993, they contended that Gallagher's fees should be calculated as follows:

Gallagher claimed 1,770.4 hours. Of this total, the Court allowed her time expended after April 5, 1991, when she left state employment. This time was 175.5 hours. Subtracting the 175.5 hours from the total claimed, 1,770.4 hours, leaves 1,594.9 hours. The Court reduced Gallagher's hours by 25 percent for duplication. Reducing the 1,594.9 by this percentage leaves 1,196.2 uncompensated hours that should be compensated. The Court authorized Gallagher's fees at $75.00 per hour, so that the amount authorized for her is 1,196.2 times $75, which equals $89,715.00.

¶62.In response, the Patients requested that the District Court recalculate the entire fee award in light of our decision in *Ihler I.* As part of their response, the Patients asserted that the District Court's initial award of Gallagher's fees at a rate of $75 was erroneous because it was without support in the record. On September 8, 1994, the Patients filed a Motion to Award Undisputed Attorneys' Fees in which it sought Gallagher's fees in the amount of $89,715. The Patients asserted that *Missouri v. Jenkins* (1989), 491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229, required the court to use current hourly rates to account for a delay in the payment of an award of attorney fees, but observed that "[t]he court may avoid some of the current rate issue by directing the Defendants to pay the undisputed portion of the fees now, pending the court's ruling on the outstanding motion" (apparently referring to the Patients' motion to reassess the entire attorney fees award).

¶63.On September 15, 1994, the District Court issued an Order Granting Interim Award of Attorneys' Fees in which it awarded fees to the Patients in the amount of $89,715. The Hospital objected based upon the possibility that the District Court's reassessment of the total fee award could be less than what the Hospital had already paid to the Patients. On October 30, 1994, the Patients and the Hospital entered into an agreement whereby the Hospital agreed to pay the Patients $89,715 conditioned upon the Patients' refunding of any overpayment.

¶64.On June 22, 1998, the District Court issued its Order on Remand. In this order, the District Court stated:

Mary Gallagher requested compensation for 1770.4 hours. As noted in the earlier findings of fact, this case was significantly overstaffed. The Court finds that a 25 percent reduction

should be applied to arrive at a reasonable number of hours for Ms. Gallagher. The initial lodestar amount for her work is thus $99,585 (1327.8 hours at an hourly rate of $75).

The District Court then reduced Gallagher's fees by an additional 25 percent, representing a reduction for the Patients' limited success--a reduction the court made in its order prior to *Ihler I* and which we affirmed on appeal. This 25 percent reduction was not reflected in the interim award. Consequently, Patients were awarded $74,688.75 for Gallagher's fees.

¶65.The Patients filed a Motion to Alter or Amend Order on Remand in which they claimed that the court erred as a matter of law pursuant to *Jenkins* by not recalculating Gallagher's fees at her 1998 rate. The Patients submitted the affidavits of Gallagher and Bernadette Franks-Ongoy which contain declarations of Gallagher's 1998 billing rate and the Montana Advocacy Program's 1998 billing rates. The District Court noted that the Patients had received payment for Gallagher's fees in 1994 and denied the Patients' request for fees based on Gallagher's 1998 rates.

¶66.On appeal, the Patients now contend that the District Court should have applied Gallagher's 1994 rate when it issued its interim award of fees on September 14, 1994. The Hospital contends that the Patients never properly presented the issue of whether the District Court should have applied Gallagher's current or historical rate. The Hospital observes that the Patients never moved the court for an evidentiary hearing and filed no briefs or supporting affidavits regarding the current versus historic rate issue. Instead, the Hospital contends, the Patients waited until an adverse ruling and then attempted to supplement the record with evidence of Gallagher's 1998 hourly rate.

¶67.The issue of whether the District Court should have calculated Gallagher's fees at her 1994 rate was never properly raised below. Significantly, the Patients never requested the District Court to award them Gallagher's fees based on Gallagher's 1994 rate. Furthermore, as the Patients admit, direct evidence of Gallagher's 1994 rate was never before the court below and, consequently, this evidence is not before us. Gallagher's affidavit, attached to the Patients' Motion to Alter or Amend Order on Remand only contains evidence of Gallagher's 1998 rate.

¶68.The Patients contend that "simple extrapolation and inference [from Gallagher's 1998 rate] results in a [1994] rate of $100." However, we cannot conclude that the District Court abused its discretion by not awarding attorney fees at Gallagher's 1994 rate when direct evidence of that rate was never presented to the court. As the Patients have

observed, a District Court abuses its discretion when its findings are not based on evidence in the record. *See, e.g., Rum Creek* 31 F.3d at 179 (reversing district court's adjustments to hourly rates because they were without basis in the record). Lastly, we note that *Jenkins* does not *require* a trial court award fees at current rates; rather, *Jenkins* states only that an enhancement for delay is "within the contemplation" of § 1988, and is "not . . barred" by the Eleventh Amendment. *Jenkins*, 491 U.S. at 284, 109 S. Ct. at 2469; *see also Barjon*, 132 F.3d at 503 (affirming denial of compensation for delayed payment). Accordingly, we affirm the award of Gallagher's fees based on her historic rate. However, pursuant to our holding above under heading IA2, Gallagher's fees shall be recomputed based on her requested rate of $80.

## III. PREVAILING PARTY ON APPEAL.

¶69.Whether the District Court erred in denying the Patients' attorney fees incurred on appeal?

¶70.In *Ihler I,* we held that the District Court erred by increasing the lodestar by 50 percent and by not including Gallagher's fees incurred while Gallagher was employed by the State, but we affirmed the District Court's reduction of the lodestar by 25 percent for lack of success. On remand pursuant to *Ihler I*, Patients filed a motion for attorney fees and expenses incurred on appeal. The District Court observed that the Patients "did not prevail on most of the issues raised in the appeal that were decided by the Supreme Court" and denied the Patients' request for fees and expenses. The Patients claim that the District Court applied the wrong legal standard, or abused its discretion in the application of the correct standard.[(3)]

¶71.A party who successfully prevails on appeal is entitled to attorney fees under § 1988. *Corder,* 104 F.3d at 249 (citations omitted). However, once again, we note that there seems to be a division of opinion amongst federal appellate courts. In this case, the division concerns what constitutes a prevailing party on appeal. In *Corder*, a Ninth Circuit panel affirmed the conclusion of the District Court that the plaintiffs did not prevail on appeal because "the net result of the various appeals was a reduced award for the plaintiff." *Corder*, 104 F.3d at 247. However, in *Ustrak*, Judge Posner, writing for a Seventh Circuit panel, held that the plaintiff was the prevailing party despite the fact that plaintiff's award was reduced on appeal. Judge Posner stated:

But is [the plaintiff] really the prevailing party on this appeal? Having persuaded us to cut

down the fee award by a third, the [defendant] could be said to be a prevailing party too . . . .

This is not the correct approach. As the prevailing party in the underlying civil rights action, [the plaintiff] is entitled to reimbursement of fees reasonably incurred, whether they are fees incurred in the original civil rights trial and appeal, fees incurred in proving those fees, or fees incurred in defending the district court's fee award. Since the reasonableness of a fee is a function in part of the success achieved by the expenditure, lack of success in obtaining fees or in defending a fee award is certainly material in deciding how large the reimbursement should be.

*Ustrak, 851 F.2d at 990.*

¶72.We agree with the Seventh Circuit that, when the defendant appeals an attorney fee award and the plaintiff incurs expenses in defending against that appeal that are reasonable even though they are not crowned by complete success, ordinarily the plaintiff should be entitled to reimbursement of those fees; the plaintiff had no choice but to incur them. *See Ustrak*, 851 F.2d at 990. Consequently, we conclude that the District Court erred in denying the Patients an award of reasonable attorney fees incurred on appeal.

## IV. ENHANCEMENT OF LODESTAR FOR UNDESIRABILITY.

¶73.Whether the District Court abused its discretion by not enhancing the lodestar to reflect the undesirability of the case?

¶74.In *Ihler I*, we concluded that the District Court's enhancement of the lodestar by 50 percent based on the contingent nature of a statutory award of fees under § 1988 was prohibited by *Dague* and remanded the case to the District Court with instructions to "delete this increase." *Ihler I*, 259 Mont. at 246, 855 P.2d at 1013. On remand, the District Court stated:

This Court's upward adjustment to the lodestar was based on *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379 (9th Cir. 1990), which held that Justice O'Conner's concurring opinion in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987), was the correct approach. Under that approach, enhancement was appropriate where a plaintiff established that without such an enhancement, he would have faced substantial difficulties in finding counsel in the relevant market. 483 U.S. at 733. This

Court therefore granted an enhancement solely due to [the] reluctance of Montana attorneys to accept civil rights cases without the prospect of an enhanced fee. However, that approach was specifically rejected in *Dague*. 120 L. Ed. 2d at 457.

¶75. The Patients contend that the District Court erred as a matter of law. The Patients assert that the District Court found that civil rights cases are, as a class, generally undesirable to attorneys in Montana and that *Dague* does not prohibit an enhancement based on undesirability. The Hospital asserts that this factor was already subsumed within the initial lodestar determination and that the Patients did not meet their burden of establishing that civil rights cases are so undesirable as to require an enhancement.

¶76. Although *Dague* prohibits an enhancement based on contingent risks, *Dague* does not prohibit all enhancements to a lodestar figure. *See Guam Soc'y of Obstetricians & Gynecologists v. Ada* (9th Cir. 1996), 100 F.3d 691, 697 (affirming an enhancement based on the extreme undesirability of the case, the likelihood that no other local attorney would have accepted the case, and the rare and exceptional nature of the case). However, there is a strong presumption that the lodestar figure represents a reasonable fee. *See Dague*, 505 U.S. at 562, 112 S. Ct. at 2641 (citation omitted). The applicant has the burden of proving that the requested enhancement is "necessary to the determination of a reasonable fee." *Dague*, 505 U.S. at 562, 112 S. Ct. at 2641 (quoting *Blum*, 465 U.S. at 898, 104 S. Ct. at 1548).

¶77. In *Dague*, the Supreme Court observed that the risk of loss (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the relative legal and factual merits of the claim, and (2) the difficulty in establishing those merits. *Dague*, 505 U.S. at 562, 112 S. Ct. at 2641. The Court noted that the difficulty in establishing the merits of a claim is ordinarily reflected in the lodestar--either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. *Dague*, 505 U.S. at 562, 112 S. Ct. at 2641. The Court observed that the first factor, the relative legal and factual merits of the claim, should play no part in the calculation of an award because accounting for it would provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones. *See Dague*, 505 U.S. at 563, 112 S. Ct. at 2642.

¶78. In holding that a lodestar fee may not be enhanced for contingent risks, the Court explicitly rejected the approach of the concurrence in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1987), 483 U.S. 711, 107 S. Ct. 3078, 97 L. Ed. 2d 585

(hereinafter *Delaware Valley II)*, that enhancement may be appropriate if the applicant can establish that without an adjustment for risk the prevailing party would have faced substantial difficulty finding counsel in the local or other relevant market because of the market treatment of similar claims as a class. *See Dague*, 505 U.S. at 563-64, 112 S. Ct. at 2642. The Court observed that the predominate reason that a contingent-fee claimant has difficulty finding counsel in any legal market where the winner's attorney fees will be paid by the loser is that attorneys view the claimant's case as too risky. *See Dague*, 505 U.S. at 564, 112 S. Ct. at 2642.

¶79.On remand, the District Court noted that its original enhancement had been based solely on reasoning contained in the *Delaware Valley II* concurrence, which had been expressly rejected by *Dague*. Accordingly, the Court correctly removed the enhancement from its award on remand.

¶80.We cannot conclude that the District Court erred as a matter of law by doing exactly as the law required. *Dague* explicitly rejected the notion of enhancing an attorney fee award because of the undesirability of a class of claims. Moreover, we note that by holding that the District Court erroneously failed to award reasonable fees at out-of-state rates, this factor--the reluctance of Montana attorneys to represent these types of claims--is now subsumed in the lodestar figure. Consequently, we conclude that the District Court did not abuse its discretion in refusing to enhance the lodestar figure for undesirability.

## V. CONCLUSION.

We remand this case to the District Court with the following instructions. First, the District Court shall recompute the lodestar using reasonable historic out-of-state rates for out-of-state attorneys, and including reasonable hours, such as travel time, which were initially excluded solely on the ground that the Patients resorted to out-of-state representation. These determinations will be based on evidence already in the record. Second, the District Court shall recompute the lodestar using the rate of $80 an hour for attorneys Olsen and Gallagher and $85 for Gallik. Lastly, the District Court shall award the Patients their reasonable attorney fees incurred on appeal in *Ihler I*, as well as reasonable fees incurred on this appeal.

¶81.We appreciate the diligence and care exhibited by the District Court in dealing with this difficult and complex case. As we have stated several times in this opinion, it is our intention that the issues addressed on remand are to be completed by the District Court

without the need for additional hearings or testimony.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

1. The following remarks of Montana attorneys are fairly representative of the affidavits submitted by the Patients: attorney Erik Thueson states that "[t]his firm does not accept civil rights cases because it has been our belief that the fees normally awarded would not cover the costs and risks"; attorney John M. Morrison states that there is a "perception among the Bar that there is no money to be made from a court-awarded fee"; and attorney Kim Ritter states, "I do not accept [civil rights] cases because I do not believe that fee awards are sufficient to fulfill my financial obligations to my family and the members of my firm."

2. The court relied on the affidavits of Erik Thueson, Timothy Whalen, and James Reynolds.

Mr. Thueson stated in his affidavit that he had practiced in Montana for 11 years and that the prevailing hourly rate was between $90 and $150 per hour, with an average of $110. Mr. Thueson further stated that "[i]n a complex case where the opposing party will be responsible for the attorney fees if the claimant prevails, the market would dictate that the fee be at least thrice that of the basic hourly rate" in order to cover the risk of loss.

Mr. Whalen stated in his affidavit that he had practiced in Montana since 1982 and that his usual hourly fee was $80, but that this rate necessitates setting a contingent fee approximately three times his usual hourly rate in order to compensate for loss. Mr. Whalen further stated that he rarely accepted civil rights cases and that he would not accept any case in which the defendant pays the prevailing plaintiff's attorney fees unless he expected his usual hourly fee award to be multiplied by a factor of three.

Mr. Reynolds stated in his affidavit that he had been in private practice in Helena, Montana since 1979 and that he had taken numerous civil rights cases. Mr. Reynolds stated that his firm charged $70 an hour in order to maintain their availability to persons of low and moderate income. He stated that based on his knowledge this rate was at least $25 per hour lower than other firms having similar experience, visibility and success. He further stated that a "fair and reasonable fee for services rendered, in civil rights cases, by an experienced civil rights attorney with approximately ten to fifteen years experience in Montana is in the range of $100 to $125 an hour, not including enhancements" for the contingent nature of such fees.

3. The Hospital claims that the Patients did not properly raise this issue below. However, we note that the Patients moved for attorney fees incurred on appeal, the Hospital opposed that motion, and the District Court reached a decision on that motion in favor of the Hospital.